586 A.2d 25

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Alfonso N. PEARSON.**

**Misc. Docket (Subtitle BV) No. 14, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 27, 1991.

John C. Broderick, Asst. Bar Counsel for the Atty. Grievance Comm'n of Maryland.

Alfonso N. Pearson, Burnwell, Ala., for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY and McAULIFFE, JJ., and CHARLES E. ORTH, Jr. (retired), Specially Assigned.

RODOWSKY, Judge.

Respondent, Alfonso N. Pearson (Pearson), and his former wife, Lois Garrison Pearson (Lois), continued to own realty in West Virginia after their divorce. While Pearson was residing in Georgia and Lois was residing in Maryland, Pearson attempted to sell the West Virginia property by signing Lois's name to all necessary documents, including a notarized deed. Bar Counsel submits "that the Respondent's intent was to illegally deprive his ex-wife of her share of the proceeds of this surreptitious transaction." Petitioner's Recommendation for Sanction at 1. Pearson submits that he was orally authorized by Lois to handle the transaction as he did. The circuit court judge to whom we referred these charges for hearing resolved the dispute by entering a judgment by default against Pearson based on a failure of discovery. In substance the issue before us is whether Pearson may be relieved from the default in order to have the charges decided on an evidentiary record. Res-

olution of that issue requires review of the procedural chaos that constitutes the record in this case.

## I

Machinery of the attorney grievance system had been set in motion in the summer of 1988 by Lois's complaint to Bar Counsel against Pearson. The present petition for disciplinary action against him was filed in this Court on August 10, 1989. The petition alleged the following. Pearson and Lois had taken title to a lot in a subdivision in Berkeley County, West Virginia in 1977. They were divorced in 1982, but continued to be co-owners of the West Virginia property. Beginning with an April 1988 listing contract and culminating in a closing of July 13, 1988, Pearson had attempted to sell the property without the knowledge and authorization of Lois. Pearson had signed Lois's name to the listing contract with the realtor, to the contract of sale with the purchaser, to an owners' affidavit of no mechanics' lien, to the notarized deed, and to a notarized authorization for the realtor to represent sellers at closing and to accept proceeds of sale on their behalf or, in turn, to authorize the closing attorney to forward the net proceeds to 3611 Oregon Trail, Decatur, Georgia (address # 1).[1] Acknowledgements on the three notarized documents recite that both Lois and Pearson appeared and made oath before a Gwinnett County, Georgia notary public, Malavese J. Doss, on June 21, 1988. Lois was unaware of Pearson's actions in the transaction until after the July 13 closing. On or about July 18, 1988, through counsel, Lois caused the settlement attorney to stop payment on the check to sellers. Corrective deeds were prepared which were executed by Lois and by Pearson and his then present wife. That couple also relinquished any claim to the proceeds, which were slightly

---

1. The record contains correspondence by Pearson during this period on letterhead stationery identifying him as an attorney at law at the Oregon Trail address. In answer to an interrogatory asking Pearson to name all the states in which he is admitted to practice, Pearson listed only Maryland.

less than $7,000.[2]

Copies of the listing contract, sales contract, mechanics' lien affidavit, authorization to realtor, and joint deed were attached to the complaint filed in this Court as Exhibits A through E respectively. Also on August 10 the Petitioner, Attorney Grievance Commission of Maryland, filed in this Court requests for admissions of facts and of the genuineness of documents. Copies of the documents attached to that request were numbered. Attachments 1 through 5 duplicated Exhibits A through E to the petition for disciplinary action. Bar Counsel also filed in this Court on August 10 thirteen interrogatories propounded to Pearson.

This Court, by order of August 28, 1989, designated Judge Eugene M. Lerner of the Circuit Court for Anne Arundel County to hear the charges. That order also set the time for response to the petition for disciplinary action at fifteen days after service.

Pearson was personally served by a private process server outside of the De Kalb County Courthouse in Decatur, Georgia on September 29, 1989. The process server's return certifies that he left with Pearson a copy of the order of August 28, of the petition, of the interrogatories, and of the requests for admissions. Accordingly, Pearson's answer to the petition was due, per this Court's order, on or before October 16, 1989.[3] Any response which Pearson intended to make to the requests for admissions, as well as his answers to Petitioner's interrogatories, were due October 31. Maryland Rules 2–424(b) and 2–421(b). The process server's return included, in legal effect, a certification

---

**2.** The ultimate net proceeds, $6,679.38, were disbursed by the settlement attorney to Lois by check dated August 8, 1988.

**3.** The clerk of the circuit court also issued a summons, directed to Pearson in Decatur, Georgia, advising that the written response was due "within 30 days after service of this summons upon you." The fifteen day period controls. *See* Maryland Rule BV9.e.2 ("The attorney responding to the charges shall file his initial pleading ... within fifteen days after the date of service ... unless a different time is fixed by the order of the Court of Appeals").

that copies of the exhibits attached to the filed, original petition for disciplinary action and to the requests for admissions had been served on Pearson. Md.Rule 2–111(a).

Pearson's answer to the petition was postmarked from Atlanta, Georgia October 18, *i.e.*, two days after the answer was due to be filed in Annapolis. That answer was seen by Judge Lerner on October 30, and was docketed October 31. No response to the request for admissions and no answers to interrogatories were filed by October 31, or thereafter.

The answer to the petition is not signed by Pearson, although there is a blank space for his signature above his typewritten name at the end of the answer and before the certificate of service. Thus, Pearson has never certified, as required by Md.Rule 1–311(b), that there is good ground to support the answer and that "it is not interposed for improper purpose or delay." It appears highly unlikely that the failure to sign the answer was mere oversight because, immediately below Pearson's typewritten name, there is written in longhand "3284 Tulip Dr., Decatur, GA 30032" (address # 2). This longhand is apparently the same handwriting as Pearson's signature certifying to service of the answer by mailing on October 16. Address # 2 became Pearson's address for the service of further papers in the action under Md.Rule 1–321(a).

The answer denied the material allegations of the petition and averred that "all acts of the Respondent was done at the direction and insistence of the complainant, Lois G. Pearson." In the answer Pearson averred that "a call was made to the office in which Malavese J. Doss was employed statin[g] her authorization." The answer does not directly identify the caller. Pearson further averred in the answer that Lois had attempted to extort $30,000 from him.

Judge Lerner, by letter of November 3, 1989, advised Pearson at address # 2 that the case was scheduled for hearing on November 29, 1989. Bar Counsel, on November 14, telephoned Pearson in Decatur. The latter promised to furnish discovery prior to the November 29 hearing date.

By petition filed in this Court on November 27, Pearson sought a continuance of the trial set for November 29 on the ground that semi-weekly treatments for "a chronic ailment" caused him "extreme fatigue and nauseousness." That same date Bar Counsel filed a written opposition, citing the lack of any supporting medical certificate. The next day this Court, by order of the Chief Judge, denied the postponement. On the evening of November 28 Pearson telephoned Bar Counsel. Pearson explained that he was in a hospital in Birmingham, Alabama, and that he was undergoing chemotherapy. He promised to provide a medical certificate. Bar Counsel arranged a continuance to a date to be set. Pearson has never furnished Bar Counsel, Judge Lerner or this Court a medical certificate.[4]

Bar Counsel had sent copies of his motion for, and of the order granting, continuance to Pearson to address # 2. That mailing was returned by the postal service with a notification of new address, 3458 Wesley Chapel Road, Apartment 268, Decatur, Georgia (address # 3).

Bar Counsel, by letter dated December 21, wrote to Pearson, insisted upon verification of Pearson's medical condition, and warned that Bar Counsel would seek a trial date if verification were not received prior to February 1, 1990. This letter does not mention open discovery, but it pointed out that Pearson had "not notified the Court nor [Bar Counsel's] office of a change of address." The December 21 letter was sent to addresses # 1, # 2 and # 3. The copy sent to the Oregon Trail address (# 1) was not returned. The copy sent to the Wesley Chapel Road address (# 3) was returned marked "no such number." The copy mailed to the Tulip Drive address (# 2) was returned with a notification of new address at the same house number on Wesley Chapel Road as address # 3, but indicating the apartment to be # 263 (address # 4). Bar Counsel received that notification of address # 4 on January 9, 1990. On

---

4. At oral argument in this Court Pearson said that he did not want his medical records, which are veteran's records, in the court file.

January 10, Bar Counsel sent a copy of the December 21 letter to address # 4, but that copy was returned on January 22 marked "no such number." Then, apparently relying on information obtained in the telephone conversation of November 28 with Pearson, Bar Counsel sent the December 21 letter to Pearson at the address of his sister, 2305—22nd Street, Birmingham, Alabama (address # 5). That copy was not returned. Nor was there any reply from Pearson to it.

On March 12 Bar Counsel left a telephone message with Pearson's sister in Birmingham requesting that Pearson "contact Petitioner otherwise motions were to be filed with the Court." Petitioner's certificate under R. 2–431, at 2. Not having received any communication from Pearson, Bar Counsel, on April 20, 1990, filed a motion for sanctions and a motion to schedule hearing. The sanctions motion sought a judgment by default, an order precluding Pearson from introducing evidence at trial, and an order deeming the requested admissions to have been admitted.[5]

Judge Lerner, by an order noted on the margin of the proposed sanction order, denied the same on April 23, 1990. That day he ordered the action scheduled for hearing on July 23, 1990. Utilizing address # 5, which Pearson had never used on any paper filed in the action, but which Bar Counsel had used in the certificate of service affixed to the motions filed April 20, Judge Lerner, by letter, advised Pearson of the July 23, 1990, trial date.

In docketing Judge Lerner's order denying the motion for sanctions, the circuit court clerk referred to it as a "[d]irective" and did not mail copies of it to the parties as required by Md.Rule 1–324. Bar Counsel learned that the motion for sanctions had been denied when he examined the court file

---

5. This latter request was superfluous. Under Md.Rule 2–424(b) the requests were deemed admitted when Pearson had failed to file any response by October 31, 1989. Perhaps Bar Counsel was seeking to block a motion by Pearson under Md.Rule 2–424(d) to be relieved of the admissions.

on July 10, 1990, in preparation for the hearing scheduled for July 23.

On May 21 there arrived in the office of Bar Counsel responses to the requests for admissions and answers to the interrogatories. The originals of these papers were not filed with the circuit court, as required by Md.Rules 2–424(b) and 2–421(b). At the hearing on July 23, Pearson represented to Judge Lerner that he had mailed the originals to the court for filing when he mailed copies to Bar Counsel. In his review of the court file on July 10, Bar Counsel learned that the discovery responses had not been filed.

In answering the interrogatories Pearson purported to make affidavit in the manner permitted by Rule 1–304, in lieu of swearing before an officer authorized to administer an oath or affirmation. The affidavit is defective. Md.Rule 1–304 requires that the affiant " 'solemnly affirm under the penalties of perjury' " that the contents of the paper are true to the best of the affiant's knowledge. Pearson's "affidavit" omits the quoted language.

Interrogatory No. 4 sought the identity of other persons contributing to the occurrence. Pearson, in answer, referred to Lois and her attorney whom he says stated "that if I [d]id not give them Thirty Thousand Dollars, authority would be denied it was not in writing." Another interrogatory sought the whereabouts of the Georgia notary. Pearson's answer was that his efforts to locate Malavese J. Doss were unsuccessful. Pearson was also asked to identify the individual who had signed Lois's name to Exhibits A through E to the petition, if Pearson had not personally signed that name. Pearson's answer was that Exhibits A through E were not attached to the petition.

In his unfiled answers to the requests for admissions, Pearson similarly failed to meet the substance of the requests. Bar Counsel had requested admissions that each of the five original documents used in the transaction were correctly reflected in a numbered exhibit attached to the

requests and in the duplicate, lettered exhibit attached to the petition for disciplinary action. Pearson answered that he did not possess the original of the listing agreement, that the signatures were not "discernible" on the copy of the contract of sale attached to his copy of the requests, and that copies of the owners' affidavit, of the authorization to the realtors, and of the deed were not attached to the petition.

Bar Counsel had also served thirty-six requests for admission of facts. To eighteen of these Pearson replied that a document referred to therein by both its numerical and its alphabetical designation was not attached as an exhibit to the petition. Three requests directed to the three notarized documents sought admissions that the Georgia notary public never observed Lois sign the respective documents. As to the owners' mechanics' lien affidavit Pearson replied: "That Mal[ ]avese J. Doss answered the phone upon the initial call and it is assumed that she spoke with her, contents of conversation unknown." As to the realtor's authorization Pearson replied: "Observations are through the [a]uditory as well as optical, and from my understanding she was authorized to notarize a signature affixed in her presence by me." As to the deed Pearson replied: "Oberservation [sic] are by auditory senses as well as optical, Yes."

On Monday, June 25, Bar Counsel telephoned Pearson's sister in Birmingham and was advised that Pearson might not be at his sister's home until the weekend of June 30–July 1. By letter of June 26 Bar Counsel wrote to Pearson at address # 5. The letter pointed out that Pearson had answered the petition without complaining of missing exhibits on the service copy. Bar Counsel advised that the discovery responses were "incomplete and evasive." Unaware that Pearson had failed to file the discovery responses, Bar Counsel cautioned that, if the discovery dispute could not be resolved by July 8, he would move to strike the responses.

On July 10, Bar Counsel again telephoned Pearson's sister's home in Birmingham. She advised that she had last seen or heard from Pearson prior to June 25 and that Pearson had removed his personal effects. On July 16 Bar Counsel filed a second motion for sanctions together with a certification under Rule 2–431 of efforts to resolve the discovery dispute. The certificate of service is by mailing to address # 5.

The sanctions motion sought, *inter alia,* a default judgment and a preclusion of defenses. These sanctions are available under Rule 2–433(a)(2) and (3) for certain failures to provide discovery. They may be imposed immediately without first obtaining an order compelling discovery. Md. Rule 2–432(a). Failure to provide answers to interrogatories is a failure to provide discovery to which Rule 2–432(a) applies.

Pearson appeared in person for the scheduled hearing on July 23. He had not received the service copy of the second motion for sanctions and accompanying certification, but he was loaned Bar Counsel's copies for review prior to the start of the hearing.

The hearing initially addressed the request for sanctions which became determinative. No testimony was taken. Pearson argued in opposition to Bar Counsel's arguments. Judge Lerner asked Pearson why he had not telephoned Bar Counsel to obtain the copies of the petition exhibits which were cross-referenced to the requests for admissions exhibits. Pearson said he "had no money." Judge Lerner asked why Pearson had not telephoned Bar Counsel collect. Pearson replied that he "expected to hear something from [Bar Counsel] concerning the inadequacy of [the discovery responses] if they were inadequate." Pearson reiterated that he had received a thick package of materials "but the lettered documents was not there."

On the issue of his authority to act for Lois, Pearson gave the following, unsworn explanation to Judge Lerner.

"In November of 1987, and earlier than that, there had been some requests by Lois that, you know, the property be sold. I was paying a note on the property, and, you know, we purchased the property in 19 ... 1977, just prior to separation. I've paid everything on the property. She never paid anything. And she said that all she wanted to do was just to get something out of it. I told her, I said, 'Well, you can have everything out of that property.' I sent to Lois letters continuously, which was admitted into evidence, as to the status of the property. I also sent to her a Power of Attorney, which she told me, 'No', say, 'I'm going to give you my permission', and she said that not only to me, but she said it in the presence of my son, both of my sons, and to others. And February of 1988, a Ms. Audrey Nelson [the sales agent for the realtor] contacted me concerning the property. I contacted Lois. I sent Lois a copy of the first listing agreement, and she told me, said, 'No, you just go ahead and take care of everything, and I know that you ... all the money will come to us.' I did as she had instructed me to do. Everything that I did, she was notified of it before it happened. And on June 27th, when the deeds were sent there, Lois, I had written to her and asked her to talk to the notary to authorize the signing of her name. She talked to the notary on June 27th, and that's the date that the deeds were mailed back to Mr. ...

"COURT: Wait a minute now. On June 27th, she talked ...

"MR. PEARSON: She spoke ...

"COURT: ... to the notary?

"MR. PEARSON: She spoke to the notary.

"COURT: In person?

"MR. PEARSON: Yes. Not in person, by telephone.

"COURT: Um-huh (affirmative).

"MR. PEARSON: And that's when the deeds were sent back to Mr. Pill in West Virginia. And everything at ... I .sent Lois ... as soon as the check was sent, it went to Lois. And what happened to that original check, I don't

know. But she called me, demanding more money. I told her, 'You got everything.' And she wanted me to give her thirty thousand dollars because she felt that that was something that she had ... should have got from the property settlement that we had earlier."

Judge Lerner then read, one at a time, many of the requests for admissions and had Pearson comment on them. The substance of Pearson's position was that he had signed Lois's name on the various documents with her permission. He reiterated that Lois "called and talked with the notary and told her that she had given me authority to sign her name."

In rebuttal argument Bar Counsel read from a transcript of the inquiry panel proceedings in this matter held on March 14, 1989. There Pearson had testified under oath that Lois had not spoken to the notary.

" 'I spoke to Lois and Ms. Hickson.... [6] I told Ms. Hickson, while I was speaking to Lois, that we needed her to notarize the deed, and so she started looking for her

---

**6.** Ms. "Hickson" is apparently ArthurLyn Combs–Hixson. One of the papers submitted to this Court by Pearson is, or at least purports to be, an affidavit by ArthurLyn Combs–Hixson on her letterhead stationery indicating that she is an attorney at law in Atlanta, Georgia. Pearson represents that this affidavit was filed as Respondent's Exhibit 1 in the inquiry panel proceeding. The affidavit is dated in November 1988. In it Ms. Combs–Hixson does "solemanly [sic] declare and/or affirm under the penalties of perjury" the truth to her personal knowledge of the statement set forth below:

"That on 27th of June, 1988, between the hours 9:30 and 10:00 a.m., I answered the telephone at the law office of Waymon Sims and myself, the caller identified herself as a Ms. Garrison calling for Mr. Alfonso Pearson. I placed Ms. Garrison on hold and notified Mr. Pearson that he had a call, upon Mr. Pearson hearing my message he came into the main office and answered the call, while speaking on the telephone Mr. Pearson asked me if I would notarize a deed. I then proceeded to get my seal to notarized [sic] the document when I recalled that I had left my seal at home. I then notified Mr. Pearson that I would be unable to notarize the deed, as I was relaying this information to Mr. Pearson, I heard him say to Ms. Garrison, that I was right here and it would only take a minute for her to speak to me. I then reached for the telephone and Mr. Pearson relayed to me that she had hung up the telephone because she had to go back to work."

seal. And so she was coming back, and Lois was telling me that she had to go because she had to go to work. I said, "Why do you have to go back to work?" I said, "It looks like you could at least talk to the lady. She's right here, tell her what we want to do." She said, "Well, you can tell her. You have my permission." And so she hung up. And Mrs. Hickson did not have her seal. But before Lois hung up, I said, "You're giving me permission." I said, "Why don't you tell the notary public, but you wouldn't do it." She wouldn't wait, and then she hung up, and after she hung up, I called the house . . . her house. She knew . . . you know, Lois' house, and there was no answer there.' "

There is no indication in the record that Malavese J. Doss and ArthurLyn Combs–Hixson are one and the same person.

Pearson's representation to Judge Lerner that the documents were notarized on June 27 conflicts with the face of the instruments. The deed and the realtor's authorization are dated and notarized June 21, 1988. The owners' affidavit as to liens is undated but notarized June 21, 1988. Pearson's explanation to Judge Lerner was that he did not receive the documents until after June 21, that he then telephoned the secretary of the settlement attorney in West Virginia, and that he was told to have the notary backdate the acknowledgement because June 21 had already been typed in the instruments. In contrast, one of the requests for admissions of fact proposed agreement that "the documents purporting to have been notarized by Malavese J. Doss on the 21st day of June, 1988, were in fact executed by [Pearson] and notarized by Malavese J. Doss on June 27, 1988." Pearson's response to that request was "False." [7]

Judge Lerner granted the motion for sanctions. That same day he signed an order (1) deeming the requested admissions of facts and of genuineness of documents admit-

---

7. Pearson's response cannot be explained on the basis that the request inaccurately assumed that he had in fact executed the documents. Pearson told Judge Lerner "at Lois's direction, I signed her signature."

ted, (2) striking the answer to the petition, (3) prohibiting Pearson from introducing evidence, and (4) entering judgment by default. Subsequently Judge Lerner filed findings of fact and concluded that Pearson had violated Rule 8.4 of the Rules of Professional Conduct.

## II

■ We agree that a default under Rules 2–432(a) and 2–433(a) is appropriate. There was a failure to provide discovery within the meaning of Rule 2–432(a) because unfiled and unsworn answers do not constitute "a response to interrogatories."

■ Nor did Judge Lerner abuse his discretion. We shall assume the truth of Pearson's representation that he was undergoing chemotherapy during part of the time that this action was pending. Nevertheless, when Pearson did direct attention to defense of his privilege to practice law, his position was evasive, improbable, and contradictory. At the argument on July 23, 1990, Judge Lerner gave Pearson ample opportunity to outline a meritorious defense. The defense that Pearson outlined requires one to accept that Lois was fully informed and had orally authorized all steps in the transaction, but that, for some unexplained reason, she would neither personally execute any of the necessary documents nor execute a written power of attorney authorizing Pearson to sign on her behalf. Further, Pearson's conflicting representations as to whether Lois had spoken directly to the notary and as to the date of the "authorized" execution and acknowledgement of the documents do not lead a trial judge to conclude that a meritorious defense would be suppressed by entry of a default.[8]

Thus, the case comes to us with a finding of fact that "[n]ot until after the closing took place on July 13, 1988, was Lois Pearson aware of Respondent's actions relating to

---

8. In his argument before this Court, Pearson represented that the cooperative notary, Malavese J. Doss, had died.

the property." That is a finding which nearly verbatim quotes paragraph 21 of the petition for disciplinary action. It is a finding based on the default. It is also a finding which is supported by proper inference from the requests for admissions of fact which were admitted by failure to respond, without regard to the default for failure of discovery.

Had this matter proceeded to trial on the charges, it appears that Pearson would have had substantial ammunition for cross-examining Lois and her attorney, both of whom had been subpoenaed by Bar Counsel, because it appears that Lois and her attorney may have attempted to extract a $30,000 "settlement" from Pearson. Even if this demand for "settlement" were made, it could have been inspired by catching Pearson trying to take Lois's money. On the other hand, and as Pearson contends, the demand could have followed a treacherous revocation of previous, orally granted authority in order to make it appear that Pearson was attempting to take Lois's money. It further appears that, after filing her complaint with Bar Counsel, Lois attempted to withdraw it. Had the case been tried, perhaps Pearson could have generated a sufficient doubt to prevent an adverse finding by clear and convincing evidence. Pearson has no one but himself to blame for the loss of that opportunity.

Pearson has known of the serious nature of the charges against him from the time he was advised of Lois's complaint. He had a dress rehearsal for the circuit court defense of the charges in the defense against the complaint before an inquiry panel where Pearson was represented by counsel. Pearson's indifference to required procedure and his evasiveness and inconsistency on critical facts bearing on the merits have produced the result that this case is presented to us for a disciplinary sanction for Pearson's having executed documents without Lois's authority in order to obtain for himself the proceeds of the sale of the West Virginia property. It follows that disbarment is the

appropriate sanction for the violation of Rule 8.4 of the Rules of Professional Conduct.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ALFONSO N. PEARSON.