557 A.2d 1332

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

Fred KOLODNER.

**Misc. (Subtitle BV) No. 9, Sept. Term, 1987.**

Court of Appeals of Maryland.

May 26, 1989.

Subsequent Order June 29, 1989.

Melvin Hirshman, Bar Counsel, and Glenn M. Grossman, Asst. Bar Counsel, for the Atty. Grievance Com'n of Maryland.

Charles F. Obrecht, Jr., Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS, BLACKWELL, JJ.

MURPHY, Chief Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action against Fred Kolodner, alleging violations of the Code of Professional Responsibility. We referred the matter, pursuant to Maryland Rule BV9 b, to Judge Joseph F. Murphy, Jr. of the Circuit Court for Baltimore County to make findings of fact and conclusions of law.

After conducting an evidentiary hearing, Judge Murphy found from the evidence that Kolodner has been a member of the Maryland Bar since June 28, 1949, his reputation being that of "a hard nosed plaintiff's lawyer, very difficult to work for and negotiate with, but scrupulously fair and honest in dealing with his clients." The evidence further disclosed to Judge Murphy that in May of 1985, Kolodner settled a personal injury claim on behalf of Joyce Pepersack, a former employee, and paid her portion of the settlement with a check drawn on his escrow account. The check "bounced." That same month, Kolodner settled a personal injury claim for Monte Yingling whose settlement check also "bounced" when he attempted to cash it. The evidence showed that although both Pepersack and Yingling thereafter received their money, they complained to Bar Counsel about Kolodner's conduct.

Bar Counsel's investigation revealed that during the period of time that Kolodner represented Pepersack and Yingling, his bank accounts "were in shambles." Judge Murphy found that funds "that should have been deposited into [Kolodner's] escrow account had been deposited into his operating account, and vice versa;" and that checks "that should have been written from his operating account had been written from his escrow account, and vice versa." Judge Murphy concluded that Kolodner's misconduct "resulted from his mistaken belief that he was not mishandling clients' funds." This belief, Judge Murphy found, was

"produced by alcoholism that caused him to temporarily lose control of his practice." Judge Murphy noted that for many years, Kolodner's personal secretary was Catherine Ford, whose name appeared with his on his escrow and operating accounts; and that throughout this period, Kolodner never had any difficulty with his accounts. Judge Murphy observed that a high volume personal injury practice, which Kolodner conducted, involved numerous settlements and the deposit of numerous insurance company drafts into escrow and the settlement proceeds paid from this account to the clients. Judge Murphy found from the evidence that given the occasional difficulty in processing insurance company drafts, "Kolodner's long run payment record was excellent." He determined that problems with Kolodner's bank accounts began after Catherine Ford retired without having trained her replacement. The evidence showed that the person selected by Kolodner to replace Ms. Ford was inexperienced and that her inexperience "caused and/or substantially contributed to the chaotic conditions of the bank accounts."

Judge Murphy found that Kolodner was responsible "for the horrible state of his bank accounts" and that this failure reflected adversely on his fitness to practice law. He said that it was Kolodner's "alcoholism and inattention, not moral turpitude [that] caused the sorry state of his bank accounts." As to this, Judge Murphy said:

"Kolodner did not misuse clients' funds with actual knowledge that he was making use of money he was not entitled to. His severe alcoholism was compounded by emotional difficulties associated with the loss of his former secretary and by domestic problems encountered early in his new marriage. These factors combined to produce his financial chaos."

Judge Murphy also considered the testimony of persons who described Kolodner as acting sober most of the time during the critical period. As to this evidence, he opined that the young lawyers who worked for Kolodner were not capable of discerning the "telltale signs of alcoholism that more experienced persons would see." Referring to the "keen eyes" of Richard B. Vincent, Director of the Lawyer

Counseling Service of the Maryland State Bar Association, Judge Murphy observed that Vincent had detected "that Kolodner had become a functional alcoholic who was moving about in a state of intoxication for so much of the time that he could not give proper attention to the status of his bank accounts."

Judge Murphy determined that as a result of alcoholism, which was presently under control, Kolodner had violated DR1–102(A)(1) and (6), DR6–101(A)(3) and DR9–102(A).[1] He also found that Kolodner's misuse and co-mingling of funds was neither willful, knowing or deliberate.

Bar Counsel took exception to Judge Murphy's finding as to the excellence of Kolodner's "long run payment record." He argues that there was no evidence that there was any difficulty in processing insurance company drafts in connection with the Pepersack and Yingling settlements. Bar Counsel also excepted to Judge Murphy's failure to find that Kolodner had violated DR9–102(B)(3) and (4), as

---

**1.** Disciplinary Rule 1–102

"Misconduct.

(A) A lawyer shall not:

   (1) Violate a Disciplinary Rule.

   (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

DR 6–101

"Failing to Act Competently.

(A) A lawyer shall not:

   (3) Neglect a legal matter entrusted to him."

Disciplinary Rule 9–102

"Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or a law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

   (1) Funds reasonably sufficient to pay bank charges may be deposited therein.

   (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

charged in the disciplinary petition.[2] As to this, Bar Counsel says that the evidence is overwhelming that Kolodner's record keeping and check disbursement procedures were inadequate and thus violative of the Rule. Indeed, Bar Counsel points out that the checks were dishonored because the funds representing their settlements were improperly withdrawn and the clients not then paid. As to sanction, Bar Counsel suggests an indefinite suspension from the practice of law without prejudice to Kolodner filing a motion to terminate the suspension after the expiration of 30 days from the filing of the opinion in this case. Bar Counsel urges that the termination of the indefinite suspension should be made subject to a number of stated conditions.

Answering Bar Counsel's exceptions, Kolodner says that there was no evidence that he had a problem with returned checks, or that he did not maintain complete records of all funds. As to sanction, Kolodner points out that there was no finding that he engaged in illegal conduct involving moral turpitude or that any dishonesty, fraud, deceit or misrepresentation was implicated in his misconduct. At most, he says he was negligent and inattentive to his practice, a result of his alcoholism compounded by emotional difficulties which he encountered early in his new marriage.

The record discloses that Kolodner is actively and enthusiastically involved in the alcoholism recovery process and has made great strides in overcoming his disease. According to Richard Vincent's letter to the Court of May 1, 1989, Kolodner has been totally abstinent from alcohol since prior to September, 1987; that he has attended and participates in Alcoholics Anonymous meetings and assists other alcoholics to find sobriety; and that he continues to take Antabuse pursuant to his physician's instructions.

---

**2.** (B) "A lawyer shall:
  (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
  (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

■ We shall accept Judge Murphy's findings and overrule Bar Counsel's exceptions. As we said in *Attorney Griev. Comm'n v. Kahn*, 290 Md. 654, 431 A.2d 1336 (1981), the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. Manifestly, therefore, in considering the protection of the public, the severity of the sanction to be imposed depends on the totality of the facts and circumstances of his case.

■ All things considered, we shall order that Kolodner be suspended from the practice of law for an indefinite period to commence thirty days from the filing of this Opinion. The suspension will not be implemented if prior to that date Kolodner agrees by petition filed in this Court (a) to remain abstinent from alcohol and to participate in such activities as may be prescribed from time to time by the Director of the Lawyer's Counseling Service of the Maryland State Bar Association, including continuing his attendance at meetings of Alcoholics Anonymous, and (b) to continue under the care and treatment of physicians as may be needed until such time as it is fairly concluded that further treatment for alcoholism is unnecessary and (c) that he consent to have his practice monitored by a member of the bar approved by Bar Counsel for such period of time as Bar Counsel deems necessary, and (d) that prior to the termination of the indefinite suspension Kolodner pay all costs of these proceedings. These conditions are subject to further Order of the Court. Kolodner must understand that a breach of any of the above conditions, should he agree to them, will constitute grounds for implementation of the indefinite suspension. See *Attorney Griev. Comm'n v. Truette*, 299 Md. 435, 474 A.2d 211 (1984).

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST FRED KOLODNER.

## ORDER

WHEREAS, Fred Kolodner was to be suspended indefinitely as a member of the Bar of this Court on June 25,

1989 in accordance with an opinion of this Court filed on May 26, 1989 [316 Md. 203, 557 A.2d 1332 (1989)]; and

WHEREAS the aforesaid suspension will not be implemented, however, if prior to that date Kolodner agrees by petition filed in this court to fulfill various conditions set forth in the opinion; and

WHEREAS the Court has considered a verified petition that the suspension not be implemented filed by Kolodner and the response of the Attorney Grievance Commission and Kolodner's answer to that response;

NOW, THEREFORE, it is this 29th day of June, 1989

ORDERED, by the Court of Appeals of Maryland, that the indefinite suspension of Fred Kolodner to commence on June 25, 1989 shall not be implemented; and it is further

ORDERED that Fred Kolodner shall continue as a member of the Bar of this Court under the following conditions:

(1) He shall remain abstinent from alcohol and participate in such activities as may be prescribed from time to time by the Director of the Lawyer's Counseling Service of the Maryland State Bar Association, including continuing his attendance at meetings of Alcoholics Anonymous.

(2) He shall continue under the care and treatment of physicians as may be needed until such time as it is fairly concluded that further treatment for alcoholism is unnecessary.

(3) He shall be associated with Michael J. Fedock III, a member of the Bar of this Court who has consented to monitor Mr. Kolodner's activities as a practicing lawyer in accordance with the terms of Kolodner's petition to stay implementation of suspension and the attached Consent and Agreement signed by Kolodner and Fedock and approved by Bar Counsel.

(4) He shall, prior to the termination of the indefinite suspension, pay all costs of these proceedings;

and it is further

ORDERED that breach of any one of the above conditions will be considered grounds for implementation of the indefinite suspension, and said conditions shall remain in effect until further Order of this Court.