591 A.2d 516

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

**Leonard Jules KERPELMAN.**

**Misc. Docket (Subtitle BV) No. 4, Sept. Term, 1990.**

Court of Appeals of Maryland.

June 27, 1991.

Glenn M. Grossman, Asst. Bar Counsel, for the Atty. Grievance Com'n of Maryland.

Leonard Jules Kerpelman, Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals of Md. (Retired), Specially Assigned.

KARWACKI, Judge.

In a petition filed with this Court on March 29, 1990, the Attorney Grievance Commission charged Leonard Jules Kerpelman, a member of the Bar of this State, with professional misconduct. The petition alleged that while acting as counsel for Clifford M. Cowles in the trial of *State v. Cowles,* Criminal Docket No. 41860 in the Circuit Court for Montgomery County, Kerpelman had violated Rules 3.5(a)(8), 8.2(a), 8.4(a), 8.4(b) and 8.4(d) of the Rules of Professional Conduct, adopted by Maryland Rule 1230.[1]

---

1. Rule 3.5 Impartiality and Decorum of the Tribunal
   (a) A lawyer shall not:
      (8) engage in conduct intended to disrupt a tribunal.
   Rule 8.2 Judicial and Legal Official
      (a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.
   Rule 8.4 Misconduct
   It is professional misconduct for a lawyer to:
      (a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
      (b) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
      (d) Engage in conduct that is prejudicial to the administration of justice.

Also, Kerpelman was charged with violating other of these Rules of Professional Conduct in the course of his representation of Daniel M. McIntyre in the defense of a criminal prosecution brought in Wicomico County.[2]

---

**2.** Rule 1.4  Communication

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

Rule 1.5  Fees

(a) A lawyer's fee shall be reasonable.  The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitation imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;  and

(8) whether the fee is fixed or contingent.

Rule 1.16  Declining or Terminating Representation

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(3) the lawyer is discharged.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.  The lawyer may retain papers relating to the client to the extent permitted by other law.

Rule 8.1  Bar Admission and Disciplinary Matters

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) Knowingly make a false statement of material fact;  or

(b) Fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does

Pursuant to Md. Rule BV9(b), we ordered that the charges be transmitted to Judge Arrie W. Davis of the Circuit Court for Baltimore City for a hearing. Soon after being personally served with the pleadings in this case on April 20, 1990, Kerpelman filed a motion to disqualify Judge Davis from making findings of fact and conclusions of law on the charges, asserting that Judge Davis "is believed to have a personal animosity to" Kerpelman. While strenuously denying any such bias, Judge Davis recommended, because of prior difficulties which he had experienced with Kerpelman while presiding in the Circuit Court for Baltimore City, that we assign another judge to hear the charges against him. Consequently, although we denied the motion to disqualify Judge Davis, Chief Judge Robert I.H. Hammerman of the Circuit Court for Baltimore City [3] was designated to conduct the hearing and to file the findings and conclusions required by Md. Rule BV11(a).

On August 2, 1990, Kerpelman, acting *pro se,* and assistant Bar Counsel met with Judge Hammerman to schedule further proceedings in the case. Both parties agreed to an order entered on August 6, 1990, which provided that a

---

> not require disclosure of information otherwise protected by Rule 1.6.
> Rule 8.4 Misconduct
>> It is professional misconduct for a lawyer to:
>> (a) Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
>> (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
>> (d) Engage in conduct that is prejudicial to the administration of justice.

**3.** Kerpelman objected to the hearing being held in the Circuit Court for Baltimore City. On May 30, 1990 he demanded transfer of the hearing to Baltimore County because "85 percent of his cases are in Baltimore County and he has no office for the practice of law in Baltimore City." We denied that transfer. Under Md. Rule BV9(b) this Court "may direct that charges be transmitted to and heard in any court." Furthermore, on the letterhead of his correspondence contained in the record his office address is listed as 2403 W. Rogers Avenue in Baltimore City.

hearing on the merits of the charges would begin on October 15, 1990,[4] the parties would submit pre-trial statements on or before October 1, 1990, any motions to be considered by the court would be heard on October 4, 1990 and the parties would conclude discovery no later than September 24, 1990.

On September 11 and 20, 1990, Bar Counsel filed motions pursuant to Md. Rules 2–432(a) and 2–433 for sanctions against Kerpelman because of his failure to respond to a request for production, inspection and copying of documents filed on August 8, 1990, and his failure to comply with the court's order of August 7, 1990, requiring him to supplement his answers to interrogatories. Kerpelman responded to Bar Counsel's motion for sanctions on October 1, 1990. In his response, he asked for a hearing of the motion on some day other than October 4 since he planned to be "out of town" on that day. This filing was brought to Judge Hammerman's attention on October 2, 1990, and he immediately wrote Kerpelman and Bar Counsel, advising them that in accordance with the earlier scheduling order Bar Counsel's motions for sanctions would be heard on October 4, 1990.

The hearing on all outstanding motions was held on October 4, 1990, as scheduled. Kerpelman did not attend. At the conclusion of the hearing on Bar Counsel's motion for sanctions, the court ruled that Kerpelman would be limited to calling as witnesses only those persons whom he had identified in his answers to interrogatories as persons having knowledge of the facts and circumstances relevant to the Cowles complaint, and that as to the McIntyre complaint, judgment by default would be entered against Kerpelman on the allegations that he violated specified Rules of Professional Conduct in the course of his representation of Daniel M. McIntyre as alleged in the petition for disciplinary action.

---

4. We ratified this extension of time for holding the hearing on the merits by order of August 8, 1990.

Following the hearing on the merits of the petition for disciplinary action on October 15 and 16, 1991, Judge Hammerman filed a written statement of his findings of fact and conclusions of law in compliance with Md. Rule BV11(a). We quote extensively from that document:

"This Court finds by clear and convincing evidence the following facts.

## I. The Cowles Complaint

"The Petitioner called as its witness the Honorable Paul Weinstein. On March 30–31, 1987 Judge Weinstein presided at the trial of Clifford M. Cowles before a jury in the Circuit Court for Montgomery County, Criminal Docket No. 41860. Cowles was charged with abducting his children from the lawful custody of his ex-wife. This Court finds from the testimony of Judge Weinstein in this proceeding that in the trial before him the Respondent on numerous occasions acted in a disruptive and disrespectful manner.

"On several occasions before the jury the Respondent made inappropriate sarcastic remarks to and about the assistant state's attorney; criticized the facilities in the courtroom; disparaged court personnel; and disparaged and questioned the competency and qualifications of Judge Weinstein himself.

"The most egregious act of professional misconduct by the Respondent was consistent, knowing and blatant ignoring and defiance of the clear and explicit order of Judge Weinstein from the commencement of the trial and repeated thereafter, that the Respondent was to ask no questions to any witness nor make any comment to the jury of the dismissal of prior child abduction charges against his client in Prince George's County. The Respondent willfully and flagrantly violated this order by questions he asked and his statement to the jury:

'All right, well the Court has prohibited us from bringing out the fact that Mr. Cowles was previously charged with child kidnapping and the case dismissed.'

It is clear that the Respondent was fully cognizant of the precise scope of Judge Weinstein's proscription. Judge Weinstein found the Petitioner in direct criminal contempt, and two days after the conclusion of the trial Judge Weinstein sentenced the Respondent to five days in the Montgomery County Detention Center. Upon appeal the finding of contempt and sentence were upheld by the Court of Special Appeals in an unreported opinion, *Kerpelman v. State,* Court of Special Appeals, No. 464, September Term, 1987, filed December 21, 1987 [*cert. denied,* 313 Md. 8, 542 A.2d 844 (1988)].

"This court kept a precise minute by minute log of the direct examination of Judge Weinstein and the cross examination. The direct testimony lasted 20 minutes and was interrupted by no recess. The cross examination on October 15 was 2 hours and 30 minutes and on October 16 1 hour and 36 minutes. These times exclude any recess time and thus there was actual cross examination by the Respondent of 4 hours and 6 minutes.

"At the Court's direction each party, prior to October 15, submitted its Statement of the Case. In his 'Case Statement' filed August 31, 1990, the Respondent wrote the following as his sole and complete statement as to the Cowles complaint:

'Weinstein took a bribe to come in with a conviction against Kerpelman's client; this having been done, it was the controlling fact which led to all else; Kerpelman committed no contempt.'

"During the 4 hours and 6 minutes of cross examination there was not a single question addressed by the Respondent to Judge Weinstein alluding to this 'controlling fact.' Almost all the questions related to Judge Weinstein's qualifications and competence as a judge and what his motivations might have been for some of his rulings (with no allusion to bribery being one).

"The cross examination of Judge Weinstein ended abruptly. This Court recalls, although the transcript will reflect with complete accuracy, that on two occasions on

the morning of October 16 the Respondent complained of this Court's rulings on objections by the Petitioner's counsel and said that he felt threatened by the rulings and might have to silently leave. At 12:10 p.m. the Respondent was asking the witness a question relating to a colloquy in the Cowles transcript. The transcript is in two volumes of 190 and 203 pages respectively. Each volume began with page 1. At the court's direction, he gave the witness the volume, page and line number. At 12:10 p.m. this Court asked the Respondent to please repeat the page number, whereupon the Respondent proceeded to criticize this Court for what he perceived to be the Court's auditory problems and then stated that he felt threatened and was leaving silently. He picked up all papers, notes and other belongings at the trial table and at 12:11 p.m. voluntarily left the courtroom with nothing further being said. The Court asked counsel for the Petitioner if there was any redirect examination of the witness, he said no and the witness was excused. The Petitioner then rested its case on both complaints, the Court set a date for a memorandum to be submitted and then adjourned, all without the Respondent having returned to the courtroom. The Court considered the hearing to have concluded. The following morning the court was hearing other proceedings, and as the Court left the bench for its customary 10 minute morning recess and was about two feet from the chambers door, the Respondent came into the courtroom and asked the Court what had transpired the day before. The Court told the Respondent that he could speak to the court reporter. The Court has heard nothing further from the Respondent."

Based upon those findings of fact, Judge Hammerman concluded that Kerpelman had committed the violations of the Rules of Professional Conduct alleged by the Attorney Grievance Commission.

As to the McIntyre complaint, Judge Hammerman recited the allegations of Bar Counsel on behalf of the Attorney

Grievance Commission which had been admitted by the default judgment entered on October 4, 1991:

"The Respondent was retained in July, 1988 to defend Daniel M. McIntyre against criminal sex abuse charges filed against him in Wicomico County, Maryland. The acts of alleged sex abuse of which McIntyre was charged occurred in or before the spring of 1978. Mr. McIntyre and his wife met with the Respondent on or about July, 1988, and discussed the Respondent's fees for the representation. The Respondent advised McIntyre that his fee would be twenty-five hundred dollars ($2,500) to cover legal work up to and including the first day of trial and a further fee of twelve-hundred and fifty dollars ($1,250) for each additional day of trial. The Respondent estimated that the trial of McIntyre's case would take three (3) days and he requested, and McIntyre paid to the Respondent, five-thousand dollars ($5,000). The Respondent stated to McIntyre and his wife that if the trial was concluded short of three days, McIntyre would be refunded the unused portion of the fee. No fee agreement was executed by McIntyre or by the Respondent.

"When McIntyre insisted upon a meeting to prepare for the trial, the Respondent was abusive to both Mr. and Mrs. McIntyre. On October 18, 1988, McIntyre verbally discharged the Respondent and on October 24, 1988, McIntyre confirmed in writing the discharge of the Respondent. He requested a refund of all but $500 of the fee. After the Respondent's employment was terminated, McIntyre requested that his file be returned to him or turned over to other counsel who would be acting on his behalf. Despite these requests and the requests of McIntyre's new attorney, the Respondent failed to turn over McIntyre's file.

"The Respondent failed to timely strike his appearance in McIntyre's case and filed pleadings and appeared in court after he was discharged. His attendance at court occurred after McIntyre's new counsel had entered his appearance.

"In a letter transmitted to McIntyre on or about January 2, 1989, the Respondent represented that he had 're-examined' the retainer agreement and claimed that it called for an 'unrefundable retainer.' This claim was made despite the fact that no written agreement existed and despite the fact that the Respondent represented to his client that a portion of the fee was, indeed, refundable if the matter was concluded short of three days of trial. In fact, the Respondent was terminated prior to the case reaching court.

"In the same letter, the Respondent threatened McIntyre with a suit for damages if McIntyre decided to go to the Grievance Commission while the Respondent was away. On or about January 10, 1989, the Respondent sent McIntyre a file analysis which ostensibly accounted for the time he devoted to the case. Said accounting misrepresented and/or inflated the services the Respondent rendered and/or the time devoted to said services. The accounting included time spent supposedly on McIntyre's behalf after the Respondent's employment was terminated. The Respondent refunded none of McIntyre's fee. The same letter, containing the spurious file analysis, was sent to the Attorney Grievance Commission as the Respondent's answer to McIntyre's complaint to the Commission. In no other way did the Respondent answer Bar Counsel's office in connection with its requests for information concerning McIntyre's complaint. Therefore, the Respondent's answer to the Attorney Grievance Commission misrepresented and/or inflated the work done for McIntyre."

Based on these facts, Judge Hammerman concluded that Kerpelman had committed the violations of the Rules of Professional Conduct alleged by the Attorney Grievance Commission.

■ Kerpelman has filed numerous exceptions to these findings of fact and conclusions of law. Although separately stated, many of his exceptions are redundant. We will address them in categories of the contentions made.

Kerpelman contends that the recommendation filed in this Court by Judge Davis, which we mentioned earlier, wherein he suggested that another judge be assigned to adjudicate the charges filed against Kerpelman tainted this disciplinary proceeding and requires its dismissal. His contention is grounded on Judge Davis's statement that the basis for his recommendation was the fact that Kerpelman, on a prior occasion in Judge Davis's courtroom, "engaged in conduct similar to that alleged in the complaint before this Court." Kerpelman argues that this statement has destroyed the ability of any member of the Maryland judiciary to fairly adjudicate the charges brought against him in this case. We disagree.

Kerpelman next asserts that Judge Hammerman engaged in unethical conduct on October 15, 1990. On that day, as the hearing on the merits of the charges was about to commence, Kerpelman asked for a postponement on the ground that he was representing a defendant in a criminal case that was also scheduled for trial in the Circuit Court for Baltimore City that morning. Judge Hammerman denied the postponement but permitted Kerpelman to go to the courtroom where the criminal case was scheduled and get a postponement of the case. The judge explained that since the disciplinary matter involving Kerpelman had been specially set for hearing, it took precedence over the criminal case in which Kerpelman was appearing as counsel. He also advised Kerpelman that he would telephone the judge who was to preside in the criminal case and explain the necessity for its postponement. Judge Hammerman made that telephone call and the criminal case was postponed. Kerpelman argues that Judge Hammerman's telephone call constituted an "unethical ex parte communication" to the judge assigned to hear Kerpelman's client's criminal case. He then posits that because he confronted Judge Hammerman with this "unethical" conduct, Judge Hammerman should have recused himself in the disciplinary proceeding. This contention is spurious and deserves no further comment.

■ Kerpelman next complains that his cross-examination of Judge Weinstein was unduly restricted. Kerpelman cites no specific example of any such "undue restriction." Control over the scope of cross-examination is a matter committed to the sound discretion of the trial court. *Commission on Medical Discipline v. Stillman*, 291 Md. 390, 422, 435 A.2d 747, 763–64 (1981). Our review of the record has convinced us that there was no abuse of that discretion by Judge Hammerman in the instant case.

Kerpelman also contends that Judge Hammerman improperly chastised him during his cross-examination of Judge Weinstein for screaming at the witness. Kerpelman argues that he was only speaking loudly. Whatever may be the proper characterization of the volume of Kerpelman's voice on that occasion is irrelevant to the issues before us.

■ In another exception Kerpelman complains that the inquiry panel which heard the charges against him was improperly "hand picked" by the Chairman of the Inquiry Committee and he was not allowed to voir dire the members of the panel. He does not specify how the provisions of Md. Rule BV6(c), governing selection of the Inquiry panel, were allegedly not followed. He also baldly asserts that the members of the inquiry panel were biased and that an improper record was kept of the panel's proceedings. These contentions are meritless since Kerpelman was afforded notice and an opportunity to defend following the institution of the instant disciplinary proceeding in this Court. *Attorney Grievance Commission v. Harris*, 310 Md. 197, 201–202, 528 A.2d 895 (1987), *cert. denied*, 484 U.S. 1062, 108 S.Ct. 1020, 98 L.Ed.2d 985 (1988).

■ Kerpelman, in several exceptions, challenges as arbitrary the entry of a judgment by default against him on the McIntyre complaint. As noted earlier, Judge Hammerman entered that order after a hearing on motions by the Attorney Grievance Commission for sanctions because of Kerpelman's failure to respond to a request for production, inspection and copying of documents and his failure to comply

with an order compelling supplementary answers to interrogatories. Judge Hammerman found that these failures were willful and contumacious and that imposition of the ultimate sanction was justified. *Attorney Griev. Comm'n v. Pearson,* 322 Md. 154, 586 A.2d 25 (1991); *Lynch v. R.E. Tull & Sons, Inc.,* 251 Md. 260, 247 A.2d 286 (1968). Ample evidence in the record supports those findings.

██ Kerpelman also excepted to the conclusions of law of the hearing court with regard to the McIntyre complaint suggesting that the Attorney Grievance Commission had no jurisdiction to investigate a claim by a member of the public that he had been charged an unreasonable fee by his lawyer. He is wrong. The public is entitled to protection from fee gouging which brings the legal profession into disrepute. *Attorney Grievance Commission v. Korotki,* 318 Md. 646, 671, 569 A.2d 1224, 1236–37 (1990). Rule 1.5 of the Rules of Professional Conduct.

██ Kerpelman contends that Judge Hammerman arbitrarily refused to postpone the hearing on all motions scheduled for October 4, 1990. As we noted above, that hearing date had been set by agreement of the parties on August 6, 1990. We believe Judge Hammerman was completely justified in denying an eleventh hour request for a postponement of this hearing where the only proffer supporting that request was that Kerpelman "planned to be out of town."

We also find no merit in Kerpelman's exception to the findings of fact with regard to the Cowles complaint. The testimony of Judge Weinstein and the transcript of proceedings in the trial of *State v. Cowles* in the Circuit Court for Montgomery County support those findings in every respect.

Kerpelman also excepts to Judge Hammerman's finding that he was verbally discharged by McIntyre on October 18, 1988 and that his discharge was confirmed by McIntyre in writing by letter dated October 24, 1988. There is no merit

to this exception. A copy of the McIntyre letter which is in the record confirmed those facts.

Having overruled the exceptions to the findings of fact and conclusions of law of the hearing judge, we now turn to the question of the appropriate sanction for the misconduct which has been established by clear and convincing evidence. An important consideration in resolving this question is the fact that Kerpelman has on two previous occasions been suspended by this Court for similar professional misconduct.

In *Attorney Grievance Commission v. Kerpelman*, 288 Md. 341, 420 A.2d 940 (1980), he was suspended for two years for fee gouging and contumacious conduct in advising a client to disregard a court order. Again, in *Attorney Grievance Commission v. Kerpelman*, 292 Md. 228, 438 A.2d 501 (1981), he was suspended for one year, consecutive to the previous suspension, for fee gouging.

In the instant case, Kerpelman demonstrates vividly that he has learned nothing from his earlier disciplinary sanctions. By his contumacious conduct as an officer of the court and his exaction of an unreasonable fee from a client, he has again revealed his unworthiness to hold himself out to the public as a practitioner of law. *Attorney Grievance Comm'n v. McCloskey*, 306 Md. 677, 690, 511 A.2d 56, 63 (1986); *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 366, 347 A.2d 556, 563 (1975). Consequently, he shall be disbarred forthwith.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO BV15c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LEONARD JULES KERPELMAN.