710 A.2d 935

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Alan Franklyn POST.**

**Misc. AG No. 53, Sept. Term, 1996.**

Court of Appeals of Maryland.

June 9, 1998.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland (the "Commission"), by Bar Counsel, filed a Petition for Disciplinary Action against Alan Franklyn Post (the "Respondent").[1] On the complaint of Robin Aro, the petition alleged that, by failing timely to file withholding income tax returns, to remit the taxes withheld, and to hold the withheld taxes in trust, the respondent violated Rule 8.4 of the Maryland Lawyers' Rules of Professional Conduct.[2] The Petition was referred, pursuant to Maryland Rule 16–711(a),[3] to the Hon. James C. Chapin, of

---

1. The petition contains two counts, each reflecting a complaint from unrelated complainants, Robin Aro and Glenn Cooper. Only the Aro complaint is before us, the Cooper complaint having been bifurcated due to the pendency in this Court of a civil action concerning the general subject matter of that complaint.

2. Rule 8.4 Misconduct
   "It is professional misconduct for a lawyer to:
   
   \*      \*      \*      \*      \*      \*
   
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   
   \*      \*      \*      \*      \*      \*
   
   (d) engage in conduct that is prejudicial to the administration of justice."
   The petition charged a violation of 8.4(c), engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, as well; however, as will more fully appear infra, the parties' stipulation effectively disposed of that charge.

3. Rule 16–711(a) reads:

the Circuit Court for Montgomery County, for hearing and to make finding of fact and conclusions of law.

A hearing was conducted on the petition. The parties, having jointly stipulated to fifty-six matters of fact, which the court accepted, testimony having been taken, and other evidence having been considered, the court, as required, determined the facts, stating that they were supported by clear and convincing evidence.[4]

The respondent, admitted to the Bar of the State of Maryland in 1972, has, since 1986, been engaged in the private practice of law, as a solo practitioner, specializing in personal injury cases on behalf of plaintiffs. He also is admitted to the bar of the District of Columbia. Until 1996, when it was declared bankrupt, the respondent's practice was known as Alan. F. Post, Chartered. Because he was allocated a portion of the debt of the previous firm with which he had been associated when it dissolved, the respondent started Alan F. Post, Chartered, his first solo practice, in debt, and with virtually no cash reserves. In March, 1996, the respondent formed Alan F. Post & Associates, P.A. He was its sole shareholder, as was also the case with the prior professional corporation he formed. Moreover, while operating each of these corporations, he employed at least one employee and sometimes more.

Because the records of the Maryland Comptroller of the Treasury (the "Comptroller") do not reflect the activity on respondent's withholding tax account before 1993, the hearing court's findings related to that period and after. The records do reflect that the respondent made payments in March, 1993, which were applied to taxes and interest outstanding from

---

"Rule 16–711. Disposition of Charges.
a. Findings. A written statement of the findings of fact and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."

4. The stipulation makes clear that, as the respondent candidly and readily admits, the respondent did not fulfill his legal obligations with regard to the State and federal withholding taxes.

1990. In addition, the stipulation reveals that, although at all relevant times, the firms maintained separate employee payroll accounts as required under Section 10–906 of the Tax-General Article,[5] with few exceptions, the respondent filed his withholding tax returns late and usually did not timely remit the taxes withheld.

The respondent and the comptroller's office agreed to a payment plan in February of 1993, when the firm's outstanding State withholding tax liability was $12,406.32. As the stipulation attests, from the inception of the plan, the respondent's payments were late. Furthermore, the respondent only made two monthly payments, prompting the Comptroller to attach his bank account. On October 5, 1993, the respondent made his next voluntary payment of 1993. At that time, he also filed his June, 1993 return, due July 31, 1993. The respondent continued to file withholding tax returns, however,

---

5. That Rule reads, in pertinent part:

"10–906. Tax to be withheld and paid to Comptroller
(a) Required.—Except as provided in § 10–907 of this subtitle, each employer or payor shall:
(1) withhold the income tax required to be withheld under § 10–908 of this subtitle; and
(2) pay to the Comptroller the income tax withheld for a period with the withholding return that covers the period.
(b) Tax withheld deemed in trust.—Any income tax withheld is deemed to be held in trust for the State by the employer or payor who withholds the tax.
(c) Separate account required.—An employer or payor who withholds income tax shall keep a separate ledger account for withholdings that indicate clearly:
(1) the amount of income tax withheld; and
(2) that the income tax withheld is the property of the State.
(d) Liability for withholdings.—If an employer or payor negligently fails to withhold or to pay income tax in accordance with subsection (a) of this section, personal liability for that income tax extends:
(1) to the employer or payor;
(2) if the employer or payor is a corporation, to:
   (i) any officer of the corporation who exercises direct control over its fiscal management; or

but they too were frequently filed late and, of course, filed without the withheld taxes.

There was a similar pattern in 1994. A new payment plan was established on January 13, 1994; however, as was true the previous year, the two payments the respondent made were late. While everything was in order with respect to the January, 1994 return, it was both on time and remitted the taxes withheld, the February, 1994 return was filed late, on March 25, 1994, without the withholding taxes. The respondent neither made payments pursuant to the payment plan nor filed any other withholding tax returns until November, 1994. The Comptroller having again obtained liens and attachments, the respondent paid the outstanding balance, then $7,102.70, on November, 15, 1994. The returns for March through November of 1994 were filed, but without the withholding taxes, on January 6, 1995.

As of March 30, 1995, the respondent's arrearage was $8,821.60, without considering the three returns which then were due. That arrearage had been paid by early April and the overdue returns filed. The respondent made no additional payments on the arrearage until he made two payments in late February and early March 1996. The respondent's payments under the payment plan continued to be consistently late. On one occasion, in August, 1995, the respondent's payment check was returned for insufficient funds, when his bank account had been attached by another creditor. For a time, the respondent filed his withholding tax returns on time, enclosing the withheld taxes. That was not the case in June, 1995. The June return was filed late and was not accompanied by interest or penalty payments. Withholding tax returns for August through November 1995 did not include the taxes; however, those for the next three months did and they were timely.

---

(ii) any agent of the corporation who is required to withhold and pay the income tax[.]''

\* \* \* \* \* \*

When the respondent formed Alan F. Post and Associates, P.A., he opened a withholding tax account with the Comptroller's office for the new firm. At that time, Alan F. Post, Chartered owed $6306.68 in taxes, exclusive of unpaid interest and penalty. The new entity had not, as of April 29, 1997, remitted withholding taxes to the Comptroller.

The respondent does not dispute that he was aware of his obligation to file withholding tax returns, to remit the taxes withheld, and to hold those funds in trust for the State and federal governments. Although the parties have stipulated that the respondent "did not intend to defraud the Comptroller or to deprive the Comptroller permanently of the funds," he acknowledged, and the court found, "that the withheld funds were not placed in his payroll account on multiple occasions due to his cash flow problems and that he used the funds withheld from his employees' wages to pay business expenses of the law firm."

The court also found some facts that may explain why the respondent had difficulty staying current with his withholding taxes, including that the respondent handles his personal injury claims on a contingency basis, incurring "substantial out-of-pocket expenses," for a time, he was paying a monthly rental that he could not afford, a portion of which, approximately $20,000, he presently is paying, in addition to his current rental payments, and his involvement for about six years in a complex case, which, in addition to his time, contributed to the economic hardship his practice has experienced. The court found that the respondent's "actual salary income for 1996 was approximately $36–$38,000," noting that he always drew checks to himself in the amount of $1000 each month, but would not cash the checks if there were insufficient funds to cover them.

Finally, the court wrote:

"Petitioner readily acknowledged that Respondent has been cooperative in the investigations of this complaint and has promptly supplied requested documents. He has never been the subject of prior disciplinary actions by Maryland

Bar Counsel. Paul T. Stein, Esquire, a member in good standing of the Maryland bar and a senior partner in an established Montgomery County law firm testified that he has known the Respondent for well over twenty years, attended law school with Respondent and has personal knowledge of his character and legal ability. He further testified that Respondent is a man of good character, a truthful person, and a good attorney who has given his clients good advice and has served them well."

As we have seen, Bar Counsel charged the respondent with violation of Rule 8.4(b) and (d). The court concluded that the respondent violated Rule 8.4(d). The respondent agrees. Recognizing that "[i]n order to establish a violation of Rule 8.4(b), there must be a violation of a criminal statute and that specific violation must adversely reflect on the lawyer's honesty, trustworthiness *or* fitness as a lawyer," the court also concluded that that section was violated. As to the first prong, the court reasoned:

"Respondent violated Sections 10–817,[6] 10–822 [7] and 10–

---

**6.** "§ 10–817. Withholding returns

   A person required to withhold income tax under § 10–906 of this title shall file an income tax withholding return."

**7.** "§ 10–822. Returns on withholdings

   (a) Each person required under § 10–906 of this title to withhold income tax shall complete and file with the Comptroller:

   (1) a quarterly income tax withholding return, on or before the last day of the month that follows the calendar quarter in which that income tax was withheld; or

   (2) if the person reasonably expects the total amount of income tax required to be withheld in a quarterly period to be $400 or more, a monthly income tax withholding return:

   (i) for the month of January, on or before February 15;
   (ii) for the month of February, on or before March 15;
   (iii) for the month of March, on or before April 30;
   (iv) for the month of April, on or before May 15;
   (v) for the month of May, on or before June 15;
   (vi) for the month of June, on or before July 31;
   (vii) for the month of July, on or before August 15;
   (viii) for the month of August, on or before September 15;
   (ix) for the month of September, on or before October 31;
   (x) for the month of October, on or before November 15;

906 [8] of the Annotated Code of Maryland, Tax General Article. Pursuant to Section 13–1007[ (d) ] [9] of that Article, a willful failure to pay withheld taxes is a criminal act.

The court finds that Respondent's conduct was willful since he voluntarily failed to comply with a known legal duty. *Attorney Griev. Comm'n* v. *Baldwin*, 308 Md. 397, 519 A.2d 1291 (1987). Respondent acknowledges that he understood that he was legally required to hold the withheld funds in trust, to promptly remit the funds to the Comptroller and the Internal Revenue Service, and to timely file returns reporting the withholdings. Respondent failed to do so, at least in part because of his election to apply those

---

(xi) for the month of November, on or before December 15; and
(xii) for the month of December, on or before January 31.

(b) A person required to file a quarterly or monthly income tax withholding return shall continue to file returns, whether or not the person is withholding any income tax, until the person gives the Comptroller written notice that the person no longer has employees or no longer is liable to file the return.

(c) A person who files a written request to change to a quarterly return filing because the person withholds less than $400 each quarter may be allowed to change to a quarterly basis at the beginning of the calendar year after the request."

8.  "§ 10–906. Tax to be withheld and paid to Comptroller
(a) Except as provided in § 10–907 of this subtitle, each employer or payor shall:
(1) withhold the income tax required to be withheld under § 10–908 of this subtitle; and
(2) pay to the Comptroller the income tax withheld for a period with the withholding return that covers the period.
(b) Any income tax withheld is deemed to be held in trust for the State by the employer or payor who withholds the tax.
(c) An employer or payor who withholds income tax shall keep a separate ledger account for withholdings that indicates clearly:
(1) the amount of income tax withheld; and
(2) that the income tax withheld is the property of the State."

9.  "§ 13–1007. Violations of income tax withholding requirements
          *     *     *     *     *     *
(d) A person who is required to provide an income tax withholding statement under Title 10 of this article and who willfully fails to provide an income tax withholding statement or who willfully provides a false income tax withholding statement is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $500 or imprisonment not exceeding 6 months or both."

funds to pay other obligations of his law firm. Respondent's conduct was willful and in violation of both federal and state law. The court does not believe, however, nor is it contended by Bar Counsel, that Respondent intended to defraud the Comptroller or the federal authorities or to deprive the Comptroller [or] the federal authorities permanently of the funds." (Footnote omitted)

With respect to the second prong, the court was not convinced that the respondent's conduct adversely reflected on his honesty or trustworthiness. Focusing on what it believed to be the root of the respondent's problem, the respondent's "endeavors to operate his office in a business-like manner," the court concluded that his conduct reflected on his fitness as an attorney. As it saw it,

"[o]ne of the most fundamental of a lawyer's functions is to give sound legal counsel to his or her clients, meaning that he or she must, when called upon to do so, advise the clients of their various lawful rights and duties, and concomitantly is bound to urge them to comply with those legal duties. An attorney, almost without regard to his reasons therefor, who does not 'practice' what he or she is required to 'preach' surely diminishes the stature and fitness of his role as a provider of legal counsel. Therefore, notwithstanding a degree of sympathy which Respondent's quandary may create, it cannot be doubted that his conduct reflected adversely on his fitness as a lawyer and, consequently, that he is in violation of Rule 8.4(b)".

The respondent does not agree that he violated Rule 8.4(b). To make that point, he has excepted to the court's concluding that he did. The respondent's problem with the conclusion goes to both prongs. With respect to the first prong—whether he committed a criminal act,—he argues:

"Conduct that may give rise to a tax offense—such as the failure to file a return or to pay a tax—should not, simply because the conduct was 'voluntary,' constitute the commission of a 'criminal act' within the meaning of Rule 8.4(b)....
If the Rule were construed in such a broad fashion, any

conduct or series of acts that could be charged as a crime, regardless of the lawyer's motive or intent, would automatically amount to a violation of the first element of Rule 8.4(b). Nothing in the Rules Commentary or the history of the enactment requires such a broad construction." (Footnote and citation omitted).

He relies on *Baldwin*. At issue in that case was the applicability of Disciplinary Rule 1–102(A), the predecessor of Rule 8.4, to a situation similar to that *sub judice*, in which an attorney had failed timely to file withholding tax returns and remit the taxes withheld, in particular, whether the subsections prohibiting "illegal conduct involving moral turpitude" and "conduct involving dishonesty, fraud, deceit or misrepresentation" were implicated. Recognizing that we declined to reach the issue this case presents, the respondent points out:

"The trial judge in *Baldwin* did find that the attorney's conduct met the general test of willfulness. . . . However, as the Court of Appeals went on to state in *Baldwin*:

'The fact-finder further concluded, however, that he was not convinced by clear and convincing evidence that Baldwin's conduct showed 'dishonesty, conduct involving moral turpitude, an intent to cheat or an intent to deprive the State of monies to which it was entitled.' This finding was based principally on the effect of Baldwin's financial and family problems and alcoholism had on his intent, together with the absence of any evidence that Baldwin falsified or did not maintain records.' "

(Quoting *Baldwin*, 308 Md. at 404–05, 519 A.2d at 1295).

The respondent maintains, in other words, that something more than the general test of willfulness is required to prove a violation of Rule 8.4(b). And, he asserts, something more is negated in this case by, among other things,[10] his maintenance of a separate employee payroll account, allowing the Comptroller, at all times to be able to ascertain what was due and in

---

**10.** The other things to which the respondent refers are his "serious business and family problems and his eventual, albeit late, filings and payments."

respect of whom, and the stipulation that the respondent did not intend to defraud the Comptroller or deprive the Comptroller permanently of the funds.

Concerning the second prong—his fitness as a lawyer,—the respondent is equally adamant that it does not apply to the circumstances of this case. He accepts the court's observation that the root of his problems "stemmed primarily not in his performance or abilities as an attorney, but rather in his endeavors to operate his office in a business-like manner." Indeed, the respondent believes that, as used in the Rule, "fitness" connotes "something intrinsic to [his] conduct that implicate[s] his legal abilities." Moreover, the respondent maintains that that is the only appropriate construction of the term when one considers that the conduct on which the court relied fits quite comfortably within the reach of Rule 8.4(d). There is no such connection between the conduct and the respondent's fitness as a lawyer in this case, as the court recognized, he asserts. Because we believe that this argument is correct, we will not address whether "something more" must be proven under the Rule to establish the necessary predicate of the commission of a criminal act.

The legal profession is a "public calling that specially invites complete trust and confidence." *Rheb v. Bar Ass'n of Baltimore City*, 186 Md. 200, 205, 46 A.2d 289, 291(1946). Thus, a critical inquiry that informs the bar admission process is into the character and fitness of each applicant for the practice of law. See Admission Rule 5. Section (b) of that Rule requires the Character Committee member to whom the matter is assigned to investigate that fact and Section (a) places the burden on the applicant to prove it. Consistent with the focus at the beginning of the process, the paramount aim of disciplinary proceedings is protection of the public from incompetent, unscrupulous, and morally deficient lawyers. *Attorney Griev. Comm'n of Maryland v. Protokowicz*, 326 Md. 714, 607 A.2d 33 (1992); *Attorney Griev. Comm'n v. Kerpelman*, 323 Md. 136, 149, 591 A.2d 516, 523 (1991); *Attorney Griev. Comm'n v. Hamby*, 322 Md. 606, 611, 589 A.2d 53, 56

(1991); *Attorney Griev. Comm'n v. Kolodner,* 316 Md. 203, 208, 557 A.2d 1332, 1334 (1989); *Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 682, 431 A.2d 1336, 1351 (1981). As we put it in *Rheb,* 186 Md. at 205, 46 A.2d at 291 (1946), "In the last analysis the duty rests upon the courts, and the profession as a whole, to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner." In such proceedings, when the facts are found, ultimately, " '[t]he question is whether, after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion. . . . It is not by way of punishment; but the courts, on such cases, exercise their discretion whether a man whom they have formerly admitted is a proper person to be continued on the roll or not.' " *Maryland St. Bar Ass'n v. Boone,* 255 Md. 420, 425, 258 A.2d 438 (1969), quoting *Ex parte Brounshall,* 2 Cowp. 829 (1778).

Rule 8.4(b) recognizes, by its reference to character traits, rather than enumerating specific crimes, that commission of some crimes evidence or demonstrate a character flaw that, were the person committing them applying for admission to the bar, would constitute a significant impediment, if not outright prohibition, to his or her admission or, having been admitted, could result in his or her disbarment. The rule identifies two such traits. In addition to those traits, however, it includes as a catchall object, "fitness as a lawyer in other respects." Since the Rule is specific in the requirement that the criminal act reflect adversely on the character traits or fitness as a lawyer, it follows that what the Rule contemplates is that the criminal act evidence another character trait, which, like honesty and trustworthiness, is relevant or critical to the practice of law. Thus, in that regard, although not the commission of a criminal act, this Court has recognized that

> "Disobedience of a court order, whether as a legal representative or as a party, demonstrates a lapse of character and a disrespect for the legal system that directly relate to an attorney's fitness to practice law and serve as an officer of the court."

*Attorney Griev. Comm'n of Maryland v. Garland,* 345 Md. 383, 398, 692 A.2d 465, 472 (Md.1997), quoting, with approval, *In re Kelley,* 52 Cal.3d 487, 276 Cal.Rptr. 375, 380, 801 P.2d 1126, 1131 (Ca.1990). We also said of the respondent in that case, who had failed to obey a court order requiring him to report to a DWI facility, at which he was to spend 33 days, "Respondent's behavior evidences both an alcohol problem and a lack of respect for the legal system. If not addressed, it may affect his professional practice and injure the public." *Id.*

This Court has not been called upon, until now, to determine whether the acts which the respondent admits, failing timely to file withholding tax returns and/or to remit the taxes reportedly withheld, and to hold in trust those taxes, fall within Rule 8.4(b) or, at the least, adversely reflects on a lawyer's fitness as a lawyer in other respects. We have considered whether failure to file income tax returns bears on a lawyer's fitness. *See Attorney Griev. Comm'n of Maryland v. Walman,* 280 Md. 453, 374 A.2d 354 (1977). The Court in that case pointed out that "the crime of which respondent stands convicted represents conduct prejudicial to the administration of justice and, under the particular circumstances of this case, reflects upon his fitness to practice law is beyond debate," *Id.* at 463, 374 A.2d at 360, citing *In re Bunker,* 294 Minn. 47, 199 N.W.2d 628, 631–32 (1972) and *Committee of Legal Ethics v. Scherr,* 149 W.Va. 721, 143 S.E.2d 141, 147 (1965). A similar result was reached with regard to possession of marijuana with the intent to distribute, albeit the issue was not presented so clearly as in this case and the case was decided under Disciplinary Rule 1–102A. *Attorney Griev. Comm'n of Maryland v. Proctor,* 309 Md. 412, 524 A.2d 773 (1987). There the hearing court concluded that the respondent had thereby violated DR 1–102(A)(3) (engage in illegal conduct involving moral turpitude), DR 1–102(A)(6) (engage in conduct that reflects adversely on fitness to practice law), and *ipso facto,* DR 1–102(A)(1) (violation of a disciplinary rule). *Id.* at 414, 524 A.2d at 774. This Court refused to overrule those findings. On the matter of the proper sanction, however, after noting that, pursuant to Standard 5.11 of the Stan-

dards for Imposing Lawyer Sanctions, adopted by the American Bar Association in February 1986, disbarment is generally appropriate when, *inter alia*, "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice," we severely sanctioned, rather than disbarred, the respondent in that case. *Id.* at 420, 524 A.2d at 777.

We agree with the conclusion reached in *Walman*, that, like the failure to file federal income taxes, the manner in which the respondent handled his escrow account in this case is conduct prejudicial to the administration of justice. Both the petitioner and the respondent also agree that this is so. We do not believe that, under the circumstances of this case, that the respondent's conduct "reflects adversely on his fitness as a lawyer." [11] The only basis for the court's conclusion that it does reflect adversely on his fitness as a lawyer is that failure to practice what one preaches undermines one's credibility as a provider of legal counsel. But that is simply another way of saying that the administration of justice may be prejudiced. The court was specific in rejecting any suggestion that, by his actions, the respondent's honesty or trustworthiness was compromised, the conclusion that one could most logically be expected to draw. Moreover, the court also diagnosed the problem as one involving the respondent's office management skills rather than "his performance or abilities as an attorney." Furthermore, there was evidence in the record attesting to the fact that this was the respondent's first brush with the lawyer discipline system and that the respondent "is a man of good character, a truthful person, and a good attorney who has

---

**11.** This Court is aware of *Application of Hyland*, 339 Md. 521, 522, 663 A.2d 1309, (1995). Aside from the fact that the facts of this case are not strikingly similar to the facts in that case, the applicant was convicted of fifteen counts of failure to file Pennsylvania State sales tax returns, for which he was sentenced to jail, and, in that case, "[t]roubling issues of candor and credibility [were] raised by much of his testimony." *Id.* at 525, 663 A.2d at 1311. Moreover, the issue in that case was whether the applicant then possessed the requisite moral character to justify his admission.

given his clients good advice and has served them well." And there is no reason to suppose, and every reason to conclude the opposite, that the court did not accept that evidence. Finally, it must be recalled that the respondent maintained the separate employee payroll accounts as required by § 10–906.

What remains is the determination of the appropriate sanction. We consider this issue cognizant that: " 'conduct prejudicial to the administration of justice,' delegates or confirms to the courts the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence." *Rheb*, 186 Md. at 205, 46 A.2d at 291. We are also mindful that the purpose of attorney discipline is the protection of the public and not punishment of the attorney. *See Attorney Griev. Comm'n v. Gittens*, 346 Md. 316, 697 A.2d 83 (1997); *Attorney Griev. Comm'n v. Kahn*, 290 Md. 654, 431 A.2d 1336 (1981); *Attorney Griev. Comm'n v. Bailey*, 286 Md. 630, 408 A.2d 1330 (1979).

■ The petitioner recommends that the respondent be indefinitely suspended from the practice of law, with the right to reapply for reinstatement no sooner than three years and the imposition of certain conditions upon his reinstatement.[12] The conditions Bar Counsel would have imposed are: payment

---

12. Some of the cases upon which the petitioner relies for the recommendation are not at all apposite to the facts of the case *sub judice*, e.g., *Attorney Griev. Comm'n v. Walman*, 280 Md. 453, 374 A.2d 354 (1977); *Attorney Griev. Comm'n v. Gilland*, 293 Md. 316, 443 A.2d 603 (1982); *Attorney Griev. Comm'n v. Powell*, 328 Md. 276, 614 A.2d 102 (1992); *Attorney Griev. Comm'n. v. Berger*, 326 Md. 129, 604 A.2d 58 (1992). The first two of the cases involved criminal prosecutions for income tax violations. The last involved misappropriation of client funds. An attorney's obligation with respect to withholding taxes was at issue in both *Attorney Griev. Comm'n v. Baldwin*, 308 Md. 397, 519 A.2d 1291 (1987) and *Attorney Griev. Comm'n v. Boyd*, 333 Md. 298, 635 A.2d 382 (1994). Both are also distinguishable. In *Baldwin,* the respondent had twice before been disciplined, which may account for the eighteen month suspension. In *Boyd,* there absolutely is no similarity between the cases other than that withholding taxes played some part in both cases. The conduct in *Boyd,* which included the failure to pay his taxes and to file his tax returns, was not only extensive, but it was willful. *See Boyd* at 308, 635 A.2d at 387.

in full of all of his federal and State tax obligations, proof that he has no other substantial indebtedness that would impair his operation of a law office, including the timely remission of withholding taxes, and a monitor of the respondent's practice and accounting records for two years. The respondent believes that a reprimand, the sanction recommended by the hearing court, is sufficient.

We agree with the petitioner that the appropriate sanction is a period of suspension. Considering all of the facts and circumstances, however, we believe that the period recommended by the petitioner is too long. Instead we believe that the public will best be served, and we think it sufficient, if the suspension imposed is an indefinite one, with the right of the respondent to reapply after 30 days. Without in any way intending to suggest that the charges are not serious, it is significant that there is an explicit finding of no intent, on the respondent's part to defraud the State and that he did maintain the employee ledger even when not remitting the taxes as and when due. Thus, there never has been an issue as to the amount of withholding taxes for which the respondent has to account. Furthermore, although sometimes late, the respondent has never sought to avoid his obligation to file returns or remit taxes. Finally, the respondent is fully aware of the obligation he has with regard to withholding taxes and informed us at oral argument that he is presently current on the payment plan he has with the Comptroller. The suspension shall be effective 30 days from the filing of this opinion.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ALAN FRANKLYN POST.

RAKER, J., concurs.

RAKER, Judge, concurring.

I would overrule Respondent's exception to the conclusion of the hearing court that he violated Rule 8.4(b). The hearing court properly found that Respondent's wilful violation of the tax law adversely reflected on his fitness as a lawyer. Respondent has committed a criminal act that reflects on his fitness as a lawyer. Section 13–1007(c) of the Tax–General Article, Maryland Code (1988, 1997 Repl.Vol.), makes the wilful failure to pay taxes a crime. Respondent wilfully and repeatedly violated his legal obligation to file necessary tax forms and to remit taxes to the State and federal taxing authorities for a period of several years. He also failed to hold in trust those funds which should have been withheld from his employees and, instead, used those funds to operate his law practice.

Respondent acknowledged that he understood his filing and payment obligations and the legal requirement to withhold funds in trust for the State and federal governments. He also acknowledged that the withheld funds were not placed in a separate account. The excuse he proffered for these failures was that he suffered cash flow problems. Respondent's motive for using the money is no excuse. We rejected this excuse in *Attorney Griev. Comm'n v. Boyd*, 333 Md. 298, 307, 635 A.2d 382, 386 (1994), stating that those monies must be held in trust for the State by the employer; those monies belong to the State and are not to be used by the employer. Judge McAuliffe, writing for the Court, stated: "The fact that respondent used them to support his business, and not his personal endeavors, is of no consequence, and does not relieve him of responsibility for his failure to hold the funds in trust for the proper authority." *Id.*

The repeated failure to timely file tax returns and to remit payments is a serious violation; when a lawyer fails to pay withholding taxes for the employees of his law office, that conduct reflects adversely on his or her fitness as a lawyer. The Minnesota Supreme Court observed that the failure to file tax returns or pay employee withholding taxes is "directly

related to the operation of [a] law practice and may well reflect upon the seriousness with which [a lawyer] regards his professional obligation in handling other people's money." *Matter of Discipline of Johnson,* 414 N.W.2d 199, 202 (Minn. 1987). In addition, perhaps the most basic element of an attorney's fitness to practice law is the ability to conduct that practice lawfully.

We said in *Attorney Griev. Comm'n v. Walman,* 280 Md. 453, 465, 374 A.2d 354, 361 (1977), that "[b]y willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above the law." How can we say with confidence that Respondent is fit to give others proper legal advice when he chooses to make illegal "business" decisions in his own life? *See id.* at 471, 374 A.2d at 365 (Smith, J. dissenting) (reasoning that a failure to file income tax returns for three years demonstrates that the attorney is "not the type of person to whom we may in confidence entrust the handling of the affairs of others").