843 A.2d 50

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

v.

**Thomas O'TOOLE.**

**Misc. AG No. 3, Sept. Term, 2003.**

Court of Appeals of Maryland.

Feb. 18, 2004.

Melvin Hirshman, Bar Counsel and Marianne J. Lee, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

Thomas J. Althauser, Esquire, of Eccleston & Wolf, Baltimore, for respondent.

BELL, C.J., and RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (retired, specially assigned), JJ.

BATTAGLIA, J.

The Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a petition for

---

1.  Maryland Rule 16–751(a) provides:

    (a) Commencement of disciplinary or remedial action.   (1) Upon approval of the [Attorney Grievance] Commission, Bar Counsel shall

disciplinary or remedial action against respondent, Thomas O'Toole, Esquire, on April 4, 2003. The Petition alleged that O'Toole, who was admitted to the Bar of this Court on December 19, 1989, violated several Maryland Rules of Professional Conduct ("MRPC"), specifically MRPC 1.15 (Safekeeping Property)[2] and MRPC 8.4 (Misconduct),[3] by failing to file various state and federal tax returns from 1998 to 2001 and by failing to pay various federal and state taxes for the same period. In accordance with Maryland Rules 16–752(a) and 16–757(c),[4] we referred the petition to Judge Thomas Waxter, Jr.,

---

file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. MRPC 1.15, in pertinent part, states:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
Bar Counsel later abandoned its charge under MRPC 1.15.

3. MRPC 8.4 states in relevant part:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice. . . .

4. Maryland Rule 16–752(a) states:
(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge

of the Circuit Court for Baltimore City for an evidentiary hearing and to make findings of fact and conclusions of law.

On August 18, 2003, Judge Waxter held that hearing and on August 26, 2003, issued an opinion in which he found, by clear and convincing evidence, that O'Toole violated MRPC 8.4(d) by failing to file federal and state individual income tax returns for 1998, 1999, and 2000 and by failing to file Maryland withholding tax forms for 1998, 1999, and 2000. Bar Counsel filed several exceptions to Judge Waxter's findings and conclusions. O'Toole did not take any exceptions. We overrule all but one of Bar Counsel's exceptions and conclude that the appropriate sanction in this case is a thirty-day suspension.

## I. The Hearing Judge's Opinion

Judge Waxter's opinion of August 26, 2003 summarized the case history and presented his findings of fact and conclusions of law:

### CASE HISTORY

A stipulation of the parties was introduced as joint exhibit number one wherein it was agreed that the Respondent, Thomas O'Toole, was incorporated as Thomas O'Toole P.C., and as such was required to file quarterly withholding tax forms and annual withholding tax consolidation forms, numbers 506 and 508, with the Comptroller of the State of Maryland, indicating the amount of withholding tax that was to be withheld from any wages. Respondent acknowledged that he failed to file forms 506 for eight quarters (quarters

---

of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing. Maryland Rule 16–757(c) states in pertinent part:

(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. . . .

ending September 1998, December 1998, March 1999, June 1999, September 1999, December 1999, March 2000 and June 2000), as well as the accompanying forms 508 which consolidated the quarterly forms on an annual basis. It is also admitted that due to the Respondent's failure to file the required returns, the Comptroller of the State of Maryland, on or about February 7, 2001, filed a notice of lien for unpaid withholding taxes. Additionally, on or about October 19, 2001, the Comptroller issued writs of garnishment against the Respondent's bank accounts. On or about December 4, 2001 it is acknowledged that the Respondent paid the Comptroller the sum of $7,354.98 which consisted of $4,840 in unpaid withholding taxes, as well as interest and penalties. It is further admitted that the Respondent filed his 1998 withholding tax forms on or about January 16, 2002, his 1999 withholding tax forms on or about September 10, 2002, and his 2000 Maryland withholding tax forms on or about September 10, 2002. The Respondent admits that he failed to file Maryland state income tax returns and federal income tax returns for the years 1998, 1999 and 2000. It is admitted that all returns were filed in satisfaction by September 2002, and all tax assessments, penalties and interests were paid as of December 2001. Respondent has been in full compliance since 2002. Although there is no specific claim that the Respondent failed to pay his taxes, Petitioner asserts that Respondent failed to file his withholding tax forms, and state and federal income tax forms for three years 1998, 1999 and 2000.

## FINDINGS

Following testimony, the offering of numerous exhibits and tax returns, and argument by counsel, this Court makes the following findings of fact:

1. The Respondent is now in joint practice with Neal Baroody, at 201 North Charles Street in Baltimore, Maryland. Prior to May, 2003, over an extended period of time, Respondent practiced at 1 East Lexington Street with Mr. Baroody and other individuals.

2. The Respondent is married, with three children, and is a 1986 graduate of Catholic University Law School. After working for a New York law firm and passing the New York state bar, the Respondent came to Baltimore to work with the firm of Venable, Baetjer & Howard, where he worked for approximately three years. He then went out on his own to practice with several individuals from approximately 1994 to date. The form of organization was a partnership with each of the individual attorneys following a corporate form. His corporation was known as Thomas O'Toole, P.C.

3. The Respondent was the only employee of his professional corporation, and since his professional corporation was a Sub-chapter S corporation, the income charged to his corporation effectively was his personal income on which he was required to pay state and federal income taxes. For much of the time since 1995 to the present, an accountant has assisted Respondent in filing necessary returns.

4. The Respondent claims that he understood his obligation to file withholding tax returns, although he is not a tax lawyer and is not intimately familiar with forms 506 (payroll withholding form) and 508 (year end reconciliation form). He testified that he was familiar with his obligation to pay income taxes, and stated that he was actually paying under his social security number an estimated income tax for the years 1998, 1999 and 2000. His state and federal income tax returns, and his withholding tax returns were not filed for these three years, 1998–2000. When his state income taxes were filed early in the year of 2002, it was clear that in each of the three years he had paid more in estimated tax than was due on each return. It appears that at the time he was failing to file his withholding tax returns and federal and state income tax returns, he was making substantial estimated tax payments to the state and federal tax authorities.

5. Because he failed to file his withholding tax returns, the State Comptroller's Office called him, demanded filings and payment, and ultimately sent him a notice of assessment for the estimated payment of $6,898.03, including $913.03 in interest and a penalty of $1,145.00. After receiving no response in the filing of the forms or payment, the Comptroller filed a lien. Thereafter, the Respondent made full payment of $7,354.98 in December of 2001, and the liens and garnishments were eliminated. Early in 2002, the Respondent through his accountant, filed his delinquent federal and state tax returns as well as the required quarterly returns (form 506) for the years 1998–2000.

6. The Respondent is an active member of the District of Columbia Bar and the Maryland Bar. He is inactive in the New York Bar because he has not paid his dues since leaving New York. He testified that he has had no other complaints or charges regarding his professional conduct, and is active in *pro bono* activities.

7. The Petitioner agrees that this case is a failure to file case, including failure to file withholding tax forms to the State of Maryland, failure to file state income tax to the State of Maryland, and failure to file income tax to the Federal Government for the years 1998–2000.

8. It is admitted that the Respondent has made payments since the year 2001 and is current on his federal and state tax obligations. It is acknowledged that he cooperated with the representative of the Attorney Grievance Commission, that he clearly made mistakes and has acknowledged his failures to file the appropriate documents and his tax returns. He freely acknowledges his error.

9. The Respondent has submitted to this Court several letters from former partners and professional associates, and from clients which confirm his high moral and professional character and his high professional and personal integrity.

## CONCLUSIONS OF LAW

After reviewing the evidence, hearing arguments, and reviewing the applicable law, this Court makes the following findings:

1.  This Court finds by clear and convincing evidence that the failure to file and pay[5] federal and state income tax returns for the calendar years 1998, 1999 and 2000, until he filed such returns in 2002, constitutes a violation of Rule 8.4(d) of the Maryland Rules of Professional Conduct. *See Attorney Grievance Commission v. Gavin*, 350 Md. 176[, 711 A.2d 193] (1998); and *Attorney Grievance Commission v. Waters*, 2001 Md. LEXIS 864.

2.  This Court finds by clear and convincing evidence that the failure to file Maryland withholding tax forms for Thomas O'Toole P.C. for years 1998, 1999 and 2000, constitutes a violation of Rule 8.4(d) of the Maryland Rules of Professional Conduct. *See Attorney Grievance Commission v. Thompson*, Misc. Docket AG, No. 9, September Term, 2002[, 376 Md. 500, 830 A.2d 474] (filed August 13, 2003); *Attorney Grievance v. Clark*, 363 Md. 169[, 767 A.2d 865] (2001); and *Attorney Grievance v. Post*, 350 Md. 85[, 710 A.2d 935] (1998).

3.  This Court makes these findings by clear and convincing evidence and finds that the Respondent, an experienced and competent attorney, was aware of the obligation to make such filings and failed to do so despite warnings from the Comptroller's Office, from at least May of 1999 through its assessment procedure, lien procedure and final garnishment procedure that resulted in the garnishment of his professional accounts in December 2001.

---

**5.** It appears that the hearing judge included the words "and pay" although other portions of the findings and conclusions make clear that the hearing judge found only that O'Toole failed to file the various returns but did *not* find a failure to pay. *See* Judge Waxter's Findings of Fact at Paragraph 7. As Bar Counsel acknowledged in his Exceptions and Recommendation for Sanction, the words "and pay" should be omitted to make this finding consistent with the hearing judge's other findings and conclusions.

While this Court finds no clear and convincing evidence of fraud, the Court has no hesitancy under the facts and the law in finding separate violations of Rule 8.4(d) of the Maryland Rules of Professional Conduct.

## II.  Standard of Review

This Court has original and complete jurisdiction over proceedings involving attorney discipline. *Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 414, 818 A.2d 1108, 1111 (2003). Clear and convincing evidence must support the hearing judge's findings. *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 388, 794 A.2d 92, 100 (2002). Bearing this in mind, we review the record independently but generally accept the hearing judge's findings of fact unless they are clearly erroneous. *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 97, 797 A.2d 757, 764 (2002). Any conclusions of law made by the hearing judge, such as whether provisions of the MRPC were violated, are subject to our *de novo* review. *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002).

## III.  Discussion

Bar Counsel filed exceptions challenging a number of the hearing judge's findings and conclusions. We shall address each exception in turn. First, Bar Counsel disagrees with the hearing judge's declaration that this case is merely a "failure to file" case. In particular, Bar Counsel disputes the hearing judge's statement that "there is no specific claim that the Respondent failed to pay his taxes," because, according to Bar Counsel, the Petition "specifically asserted" a failure to file tax returns *and* pay Maryland withholding taxes. Bar Counsel argues additionally, but along the same lines, that the hearing judge's description of the case as a "failure to file case" cannot be reconciled with the judge's finding of fact that O'Toole did not pay Maryland withholding taxes until after the State Comptroller garnished his bank accounts. In Bar Counsel's view, the hearing judge should have concluded that O'Toole violated MRPC 8.4(d) by not only failing to file the

necessary tax forms but also by failing to pay State withholding taxes when they were assessed.[6]  We disagree.

O'Toole formed his professional corporation, Thomas O'Toole, P.C., as a so-called "Subchapter S corporation" or "S corporation" under the federal tax laws.  *See* 26 U.S.C.A. §§ 1361–1379 (2003).  A "Subchapter S" corporation allows a company of seventy-five or fewer shareholders to enjoy the benefits of incorporation but avoid the taxation of both the corporate entity and its shareholders.  *Id.,* § 1361(b)(1)(A) (defining an "S corporation" and setting forth the eligibility criteria); *see Byrne v. Commissioner,* 361 F.2d 939, 942 (7th Cir.1966) (recognizing the purpose of the S corporation, " 'to permit a qualified corporation and its shareholders to avoid the double tax normally paid when a corporation distributes its earnings and profits as dividends' ").  Thus, with few exceptions, the corporation does not pay tax at the corporate level, but its earnings "pass through" to the shareholders who must report profits or losses on their federal and state individual income tax returns.  *Id.,* §§ 1363(b) (providing that, with several exceptions, "[t]he taxable income of an S corporation shall be computed in the same manner as in the case of an individual"), § 1366(a)(1) (providing that the shareholders of an S corporation pay taxes according to the corporation's income or losses).

Judge Waxter's findings of fact, which were not clearly erroneous, demonstrate that O'Toole was the sole employee of Thomas O'Toole, P.C. since its formation in 1993.  As an employer of O'Toole, Thomas O'Toole, P.C., the corporation, was required to comply with Maryland Code, § 10–901 *et. seq.* of the Tax–General Article (1957, 1997 Repl.Vol., 2002 Supp.), which set forth an employer's duties regarding withholding employee taxes.  One duty, under Section 10–906(a),[7] required

---

**6.**  Bar Counsel presented no evidence of the status of O'Toole's federal withholding tax requirements, and the hearing judge made no finding regarding any federal withholdings.  Bar Counsel's exception here involves only O'Toole's Maryland withholding returns and related tax payments.

**7.**  Section 10–906(a) of the Tax–General Article states:

an employer to withhold a specified amount of employee wages periodically and then pay that money to the State Comptroller each period. Section 10–817 of the Tax–General Article (1957, 1997 Repl.Vol.)[8] required an employer to report all such withholdings and, under Section 10–822,[9] the reports must have been completed and filed monthly, quarterly, or annually, depending on the amount of tax reasonably expected to be withheld. The parties in this case stipulated that

*Required.*—Except as provided in § 10–907 of this subtitle, each employer or payor shall:

    (1) withhold the income tax required to be withheld under § 10–908 of this subtitle; and

    (2) pay to the Comptroller the income tax withheld for a period with the withholding return that covers the period.

**8.** Section 10–817 of the Tax–General Article provides: "A person required to withhold tax under § 10–906 of this title shall file an income tax withholding return."

**9.** Section 10–822 of the Tax–General Article states in pertinent part:

(a) *Required.*—(1) Except as provided in paragraphs (2) and (3) of this subsection, each person required under § 10–906 of this title to withhold income tax shall complete and file with the Comptroller a quarterly income tax withholding return, on or before the last day of the month that follows the calendar quarter in which that income tax was withheld.

    (2) If the person reasonably expects the total amount of income tax required to be withheld in a quarterly period to be $700 or more, instead of a quarterly income tax withholding return the person shall complete and file with the Comptroller a monthly income tax withholding return....

    (3) If the person reasonably expects the total amount of income tax required to be withheld in a calendar year to be less than $250 instead of a quarterly income tax withholding return the person shall complete and file with the Comptroller an annual income tax withholding return on or before January 31 that follows that calendar year.

(b) *Continued filing required.*—A person required to file a quarterly or monthly income tax withholding return shall continue to file returns, whether or not the person is withholding any income tax, until the person gives the Comptroller written notice that the person no longer has employees or no longer is liable to file the return.

(c) *Change from monthly to quarterly return.*—A person who files a written request to change to a quarterly return filing because the person withholds less than $700 each quarter may be allowed to change to a quarterly basis at the beginning of the calendar year after the request.

O'Toole, on behalf of Thomas O'Toole, P.C., was required to make quarterly reports and, in addition, file a separate report annually as a year-end reconciliation. Quarterly reports are made on a Form MW 506 (Employer's Return of Income Tax Withheld), and a Form MW 508 (Annual Employer Withholding Reconciliation Report) is used to report the year-end withholding tax reconciliation. *See* COMAR 03.04.01.01(D)(1),[10] 03.04.01.01(E)(2)(a).[11]

For a number of quarters prior to the time period at issue in this case, O'Toole had withheld amounts from his own salary, filed the withholding returns, and made the corresponding tax payments to the State. During the eight quarters in question in this case, from September of 1998 through June of 2000, O'Toole did not file the forms MW 506 quarterly or the MW 508 annually, although he had a continuing obligation to do so. During this same time period, however, O'Toole had made substantial estimated state and federal tax payments under his social security number.

Because O'Toole made his estimated payments to his social security number rather than along with the required withholding return forms, the State Comptroller applied them to him personally instead of to Thomas O'Toole, P.C. The money was not credited to the corporation's tax obligations. Therefore, based on O'Toole's corporation's previous withholding payments from before September 1998, the State Comptroller estimated O'Toole's tax liability for the eight quarters at issue, added interest and penalties, and on November 21, 2000, sent him a notice of assessment for $6,795.98. The State Comptroller thereafter filed a lien for the assessment amount and sought garnishment of O'Toole's bank accounts. Judge Wax-

---

**10.** COMAR 03.04.01.01.D.1 states: "Every employer subject to the withholding provisions shall make either a quarterly or monthly return to the Comptroller on Form MW 506."

**11.** COMAR 03.04.01.01(E)(2)(a) states: "(2) On or before February 28 of each year, the employer or payor shall file with the Comptroller the following forms or information: (a) MW 508—Employer's Annual Withholding Reconciliation Report."

ter found that O'Toole made a payment of $7,354.98 to the State Comptroller on December 5, 2001.

Bar Counsel contends that the one-year lapse between the assessment of the withholding tax and O'Toole's December 5, 2001 payment constituted a failure to pay withholding taxes and a violation of MRPC 8.4(d). The argument misses the mark. O'Toole's and his corporation's State tax payment obligations during the eight quarters at issue were satisfied by his previously made estimated tax payments. Judge Waxter found, in fact, that these payments exceeded his corporate and personal state tax liability at any given time during the period in question. As a result of his estimated payments, whenever tax payments to the State came due during the years of 1998 to 2000, the State Comptroller had in its possession enough of O'Toole's money to account for those obligations. Hence, Judge Waxter's conclusion that O'Toole did not violate MRPC 8.4(d) by failing to pay taxes is sufficiently supported by the record. We shall overrule Bar Counsel's exception.[12]

Bar Counsel also excepts to the hearing judge's finding that "[i]t is admitted that the Respondent has made payments since the year 2001." The parties interpret this statement by the hearing judge differently. Bar Counsel seemingly reads this statement to mean that O'Toole timely met all of his payment and filing obligations in 2001, which Bar Counsel

---

12. We find it important to note that Bar Counsel attempts to draw a distinction between O'Toole's payment of personal tax and payment of his corporation's tax. In other words, Bar Counsel apparently does not consider it relevant that O'Toole made estimated tax payments to his social security number because it was O'Toole's failure to pay the corporate tax, not his personal tax liability, that gave rise to the "failure to pay" charge. Bar Counsel's view is evident because, midway through the evidentiary hearing, Bar Counsel objected to questions about how much overpayment O'Toole made on his previous personal tax returns. Bar Counsel stated that "there's no allegation in the Petition for disciplinary action regarding payments to the Maryland State and Federal income taxes, it's just failure to timely file." Because of the nature of O'Toole's Subchapter S corporation, however, any tax liability of the corporation, in essence, also would be O'Toole's personal obligation and included in personal return under his social security number.

believes is contrary to the evidence in the record. On the other hand, O'Toole considers this statement to mean simply that, *after* 2001, he has made tax payments. The finding, in O'Toole's view, is not clearly erroneous because Bar Counsel admitted in the record that O'Toole made payments in 2001 and 2002.

A plain reading of the hearing judge's statement leads us to agree with O'Toole that the hearing judge merely found that O'Toole had made tax payments *after* 2001. Clear and convincing evidence in the record supports this finding. The testimony of the State Comptroller's representative at the hearing indicates that O'Toole made full payment of the assessed withholding tax amount in December of 2001 and that O'Toole made another payment on April 30, 2002. Additionally, the parties stipulated that, "[o]n or about December 4, 2001, Respondent paid the Comptroller the sum of $7,354.98 . . . ." Bar Counsel's exception is, therefore, overruled.

■ Bar Counsel's final exception relates to the hearing judge's failure to find a violation of MRPC 8.4(b), which provides that "it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Bar Counsel urges that O'Toole committed this variety of misconduct by wilfully failing to file an income tax withholding return in violation of Maryland Code, Section 13–1007(a) of the Tax–General Article (1988, 1997 Repl.Vol., 2002 Supp.)[13] and by wilfully failing to file an income tax return in violation of Maryland Code, Section 13–1001(d) of the Tax–General Article (1988, 1997 Repl.Vol., 2002 Supp.).[14]

---

**13.** Section 13–1007(a) of the Tax–General Article states:
*Willful failure to file income tax withholding return.*—A person who is required to file an income tax withholding return and who willfully fails to file the return as required under Title 10 of this article is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $10,000 or imprisonment not to exceed 5 years or both.

**14.** Section 13–1001(d) of the Tax–General Article states:

To establish a violation of MRPC 8.4(b), Bar Counsel must prove by clear and convincing evidence that O'Toole not only committed a criminal act, but also that the criminal act "reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." *See Attorney Grievance Comm'n v. Post,* 350 Md. 85, 92, 710 A.2d 935, 938 (1998). In the case before us, the hearing judge's findings make it clear that O'Toole committed at least two types of criminal acts: the willful failure to file Maryland withholding tax forms and the willful failure to file income tax returns. Thus, the question becomes whether either or both of these types of criminal acts fulfills the second element of an MRPC 8.4(b) violation by reflecting adversely on O'Toole's honesty, trustworthiness, or fitness to practice law.

First, we consider whether O'Toole's failure to file withholding tax forms violated MRPC 8.4(b). Our opinions in *Attorney Grievance Comm'n v. Post,* 350 Md. 85, 92, 710 A.2d 935, 938 (1998) and *Attorney Grievance Comm'n v. Clark,* 363 Md. 169, 767 A.2d 865 (2001), which discuss attorneys' failures to file and pay withholding tax returns, guide our analysis here. In *Post,* we held that an attorney's failure to file and pay withholding tax did not constitute a violation of MRPC 8.4(b) under the circumstances in that case. 350 Md. at 99–100, 710 A.2d at 942. Post, the attorney facing disciplinary charges in that case, had maintained a business that operated with several employees whose income he had withheld for tax purposes. *Id.* at 91, 710 A.2d at 937–38. Although there was a specific finding that Post did not intend to defraud the government, it was determined that he willfully neglected his obligation to file and pay withholding tax returns on behalf of his business and, instead, applied the money withheld from his employees to pay other business expenses. *Id.* at 93–94, 710 A.2d at 939. To assess whether this conduct violated MRPC

---

*Income tax.*—A person who is required to file an income tax return and who willfully fails to file the return as required under Title 10 of this article is guilty of a misdemeanor and, on conviction, is subject to a fine not exceeding $10,000 or imprisonment not exceeding 5 years or both.

8.4(b) as the hearing judge had found, we focused on the second element of the inquiry: whether failure to file and pay withholding tax returns "reflects adversely on his fitness as a lawyer." *Id.* at 99, 710 A.2d at 942. Chief Judge Bell, writing for the majority of the Court, stated:

> We do not believe that, under the circumstances of this case, that the respondent's conduct "reflects adversely on his fitness as a lawyer." The only basis for the [hearing judge's] conclusion that it does reflect adversely on his fitness as a lawyer is that failure to practice what one preaches undermines one's credibility as a provider of legal counsel. But that is simply another way of saying that the administration of justice may be prejudiced. The [hearing judge] was specific in rejecting any suggestion that, by [Post's] actions, the respondent's honesty and trustworthiness was compromised, the conclusion that one could most logically be expected to draw. Moreover, the [hearing judge] also diagnosed the problem as one involving the respondent's office management skills rather than "his performance or abilities as an attorney."

*Id.* (footnote omitted). This Court further observed that Post had never before been the subject of attorney disciplinary proceedings and that the evidence suggested that he was "a man of good character, a truthful person, and a good attorney who has given his clients good advice and has served them well." *Id.*

In *Clark,* we agreed with the hearing judge's conclusion that Clark had violated MRPC 8.4(b). *Id.* at 179, 767 A.2d at 871. Clark had employed a secretary whose income he had withheld for tax purposes. On repeated occasions from September of 1992 until January of 1999, Clark neglected to file the appropriate withholding tax forms and frequently did not make the required quarterly payments of his secretary's withheld wages. *Id.* at 175–77, 767 A.2d at 868–69. During this extended period, Clark did make occasional payments to lessen the amount of delinquent tax he owed, but his tax arrearage grew nonetheless. *Id.* Clark's habitual refusal to comply with both the filing and payment requirements while continu-

ing to withhold his secretary's wages constituted a criminal act reflecting adversely on his honesty, trustworthiness, or fitness to practice law in violation of MRPC 8.4(b).

Under the circumstance of the case at hand, O'Toole's failure to file withholding tax forms does not reflect adversely on his honesty, trustworthiness, or fitness to practice law. This case differs from *Post* and *Clark* in two very important respects. First, *Post* and *Clark* appraise the conduct of attorneys who not only have failed to file withholding tax forms but also have failed to make the required tax payments on time. O'Toole, by contrast, had paid enough state tax to cover withholding tax responsibilities. Furthermore, the attorneys in *Post* and *Clark* used the income withheld from employees of their businesses to pay business or personal expenses, while O'Toole did not; he quite simply had no other employees. In light of these facts, we hold that O'Toole's failure to file withholding tax forms does not constitute a violation of 8.4(b).

Next, we must determine whether O'Toole's separate criminal act of willfully failing to file income tax returns reflects adversely on his honesty, trustworthiness, or fitness to practice law. For the following reasons, we conclude that it does. The Comment to MRPC 8.4 states: "Many kinds of illegal conduct reflect adversely on fitness to practice law, such as ... *the offense of willful failure to file an income tax return.*" (emphasis added). This Comment was emphasized in *Attorney Grievance Comm'n v. Atkinson*, 357 Md. 646, 745 A.2d 1086 (2000). There, we sustained the hearing judge's conclusion that Atkinson had violated MRPC 8.4(b) by failing to file income tax returns for ten consecutive years. *Id.* at 655, 745 A.2d at 1091. Distinguishing Atkinson's conduct from the facts in *Post,* where the attorney "had not steered himself completely clear of the taxing authorities," we stated:

> Atkinson, on the other hand, purposefully avoided almost all contact with both the state and federal income taxing authorities and at no point exhibited, over a period of eleven years, any real intention to fulfill her duties of filing the

required returns and paying the taxes due, until the authorities discovered her delinquency and contacted her.

*Id.* at 654, 745 A.2d at 1090. We also noted that the hearing judge had concluded specifically that Atkinson's conduct was dishonest but that there was no finding of an intent to defraud. *Id.* at 655, 745 A.2d at 1091. Atkinson, however, did " 'willfully, knowingly, and purposefully fail[ ] to file income tax returns from 1986 to 1996,' *again the willful failure to file being a crime that adversely reflects on a lawyer's fitness to practice law."* *Id.* (emphasis added).

The same holds true in the present case. Notwithstanding the fact that O'Toole had made substantial deposits on his income tax liability and that his criminal act arose from a failure to file individual income tax forms only, O'Toole, with full knowledge of his legal responsibilities, willfully failed to file his individual income tax returns for three consecutive years. He filed his delinquent returns only after learning that he was the subject of Bar Counsel's investigation. We conclude that O'Toole's willful three-year individual income tax filing lapse reflects adversely on O'Toole's fitness to practice law and constitutes a violation of MRPC 8.4(b). *Atkinson,* 357 Md. at 655, 745 A.2d at 1091; *Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 463, 374 A.2d 354, 360 (1977) (stating that the attorney's crime of failing to file tax returns reflected upon his fitness to practice law); *see also In re Lawrence,* 332 Or. 502, 31 P.3d 1078 (2001) (holding that an attorney had violated Oregon's equivalent to MRPC 8.4(b) by failing to file income tax returns over a three-year period, even though the attorney had caught up on his tax payment obligation).[15] Bar Counsel's exception is sustained.

---

**15.** In *In re Lawrence,* the "accused" failed to file his income tax returns for 1992, 1993, and 1994. 31 P.3d at 1081. By the time the Bar of Oregon filed its formal complaint against Lawrence in 1997, more than a year had passed since he had paid all back taxes, penalties, and interest. *Id.* Although there were no longer payments due, the Supreme Court of Oregon held that Lawrence's failure to file the tax returns at the times required by law constituted a criminal act that reflects adversely on a lawyer's fitness to practice law. *Id.* at 1083.

## IV. Sanction

We turn now to the appropriate sanction for O'Toole's violations of MRPC 8.4(b) and 8.4(d) for failing to file Maryland withholding returns and for failing to file federal and state income tax returns. The appropriate sanction for a violation of the MRPC depends on the facts and circumstance of each case, including consideration of any mitigating factors. *Attorney Grievance Comm'n v. Awuah,* 374 Md. 505, 526, 823 A.2d 651, 663 (2003); *Attorney Grievance Comm'n v. Clark,* 363 Md. 169, 184, 767 A.2d 865, 873 (2001). Nonetheless, the principles guiding our determination of an appropriate sanction are well established. *Attorney Grievance Comm'n v. McClain,* 373 Md. 196, 211, 817 A.2d 218, 227 (2003). Primarily, we seek "to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession." *Awuah,* 374 Md. at 526, 823 A.2d at 663 (quoting *Attorney Grievance Comm'n v. Webster,* 348 Md. 662, 678, 705 A.2d 1135, 1143 (1998)). To achieve the goal of protecting the public, we impose a sanction that is "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.* (quoting *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997)).

Where we have found misconduct for an attorney's failure to meet his or her tax obligations, the sanctions have ranged widely depending on the circumstances in each case. *See, e.g., Attorney Grievance Comm'n v. Tayback,* 378 Md. 578, 837 A.2d 158 (2003) (imposing suspension with right to reapply after 60 days for willful failure to timely file and timely pay federal and state income tax returns); *Attorney Grievance Comm'n v. Thompson,* 376 Md. 500, 830 A.2d 474 (2003) (suspending attorney indefinitely with the right to reapply after one year for, *inter alia,* failing to pay federal and state withholding taxes); *Clark,* 363 Md. at 183–85, 767 A.2d at 873–74 (suspending with immediate right to reapply for repeated failures to file and pay withholding tax returns); *Attorney Grievance Comm'n v. Atkinson,* 357 Md. 646, 745 A.2d 1086

(2000) (imposing indefinite suspension with right to reapply after one year for willful failures to file and pay state and federal tax returns over at least ten years); *Attorney Grievance Comm'n v. Gavin*, 350 Md. 176, 711 A.2d 193 (1998) (issuing a reprimand for failure to correct tax payment and filing delinquencies); *Post*, 350 Md. at 100–01, 710 A.2d at 942–43 (suspending indefinitely with right to reapply in thirty days for failing to timely file and timely pay state withholding taxes); *Attorney Grievance Comm'n v. Breschi*, 340 Md. 590, 667 A.2d 659 (1995) (imposing 180–day suspension for failure to timely file and pay federal income tax returns for two years); *Walman*, 280 Md. at 465–66, 374 A.2d at 362 (suspending attorney for three years for failing to file and pay returns).

Bar Counsel recommends that we prescribe a sixty-day suspension. In support of this recommendation, Bar Counsel relies on other attorney discipline cases in which we imposed sanctions of suspension upon attorneys who failed to file timely tax returns and timely pay taxes. *See Post*, 350 Md. 85, 710 A.2d 935; *Breschi*, 340 Md. at 590, 667 A.2d at 659. The circumstances in these cases differ somewhat from the situation in the present case, which involves a failure to file tax forms rather than a failure to pay taxes.

In *Breschi*, we imposed a 180–day suspension for a violation of MRPC 8.4(d). The violation arose from Breschi's failure to file and pay federal income tax returns for which he was prosecuted and convicted in federal court. *Id.* at 594, 667 A.2d at 661. Breschi was extremely remorseful and presented mitigation evidence of hardship in his life, but we concluded that the violation warranted a suspension, because a reprimand would "minimize" the "serious" nature of the misconduct. *Id.* at 605, 667 A.2d at 666.

In *Post*, the attorney violated MRPC 8.4(d) by not paying or filing the required withholding tax returns when they came due, even though he had withheld wages from his several employees for tax purposes. 350 Md. at 93–94, 710 A.2d at 939. We described Post's conduct as "serious" but found it to be mitigated by the hearing judge's explicit finding that Post

had no intent to defraud the State and that he maintained a ledger "even when not remitting taxes as and when due." *Id.* at 101, 710 A.2d at 943. We suspended Post indefinitely with the right to reapply after thirty days. *Id.*

Because O'Toole did not fall behind on tax payments, the conduct at issue in this case is clearly not as egregious as what we addressed in *Post* or *Breschi.* O'Toole paid estimated taxes to cover his state tax obligations and merely failed to file the appropriate withholding and income tax returns on time. During the period in question, O'Toole also made substantial estimated payments to the federal taxing authorities but did not file the appropriate income tax forms.[16] O'Toole's violations were not committed with an intent to defraud the government. In addition, O'Toole readily admits his errors, cooperated with the representative of the Attorney Grievance Commission during its investigation, and is now current on all of his federal and state tax responsibilities. Other members of the Bar and clients alike have attested to O'Toole's "high moral and professional character" as well as "his high professional and personal integrity."

Emphasizing these circumstances, O'Toole argues that a reprimand would be a sufficient sanction. He invokes our opinion in *Gavin,* in which we reprimanded an attorney for failing to correct certain tax delinquencies. The respondent in *Gavin* arranged with his wife that she would have the sole responsibility of preparing the couple's tax returns. 350 Md. at 181, 711 A.2d at 196. Gavin discovered in December of 1988 that his tax returns from 1985 through 1988 had not been filed, but, notwithstanding this discovery, did not correct his tax deficiencies until years later, eventually catching up in 1994. *Id.* at 186, 711 A.2d at 198. We agreed with the hearing judge that, although Gavin did not fall behind on his taxes willfully, he willfully failed to rectify the problem in a timely manner. *Id.* at 193, 711 A.2d at 201. This, we held,

---

**16.** The estimated payments to the federal government kept O'Toole current on his payment obligations except for the year 2000, when he slightly underestimated his tax liability.

constituted conduct prejudicial to the administration of justice and violated MRPC 8.4(d). *Id.* at 193, 711 A.2d at 201–02. In considering the appropriate sanction, we recognized that most our attorney discipline cases in which we imposed suspension for tax violations "involved the attorney's willful failure to file his returns or avoid his taxes initially." *Id.* at 198, 711 A.2d at 204. Because Gavin, initially, did not evade his tax obligations intentionally but only failed to "rectify his problems timely," we declined to suspend him and issued a reprimand. *Id.*

O'Toole's conduct warrants a sanction more severe than a reprimand, however. Unlike the attorney in *Gavin* who did not fall behind on his taxes willfully because he believed his wife had completed the task, O'Toole willfully ignored his filing obligations as they came due. Moreover, O'Toole's failure to file his federal and state income tax forms over a three-year period along with the willful neglect of his withholding tax filing obligations represents serious misconduct. As we stated in *Walman:*

> An attorney's willful failure to file income tax returns may seriously impair public confidence in the entire profession. The need, therefore, to maintain public respect for the bar is a vital consideration in the imposition of disciplinary sanctions. The lawyer, after all, is intimately associated with administration of the law and should rightfully be expected to set an example in observing the law. By willfully failing to file his tax returns, a lawyer appears to the public to be placing himself above the law.

280 Md. at 464–65, 374 A.2d at 361. We also have stated that "[o]ne of the most relevant considerations in determining a sanction for failure to file income tax returns is the intention and motive of the respondent." *Gavin,* 350 Md. at 197–98, 711 A.2d at 204 (quoting *Breschi,* 340 Md. at 601, 667 A.2d at 665). O'Toole knew of his filing obligations to both the federal and state taxing authorities, yet he began complying with them only after the Comptroller's repeated demands and after a lien had been filed against his bank account. As we determined above, O'Toole's tax neglect reflects adversely on his fitness to practice law. Describing the seriousness of an attorney's

willful disregard of tax filing responsibilities, one court stated: "[T]he willful failure to file tax returns in a timely manner warrants a significant suspension from the practice of law. Moreover, repeated failure to do so ... ordinarily would justify even a longer period of suspension." *In re Lawrence,* 31 P.3d at 1086. O'Toole's intentional noncompliance with a known legal duty, therefore, deserves a sanction of suspension. Considering all of the circumstances in this case, we conclude that, to protect the public and deter other lawyers from misconduct, the appropriate sanction is suspension for a period of thirty days. O'Toole shall stand suspended from the practice of law in this State for a period of thirty days from the date of the filing of this Opinion; he shall stand suspended beyond that time unless all costs incurred in connection with this proceeding are paid in full.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST THOMAS O'TOOLE.*